COMMONWEALTH vs. FRANKLIN FRUIT CO., INC.

Essex. November 2, 1982. — February 23, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law,* Equal protection of laws, Common day of rest. *Due Process of Law,* Selective prosecution, Common day of rest. *Common Day of Rest. Selective Prosecution.*

Evidence at a hearing on a motion to dismiss complaints charging the defendant, a supermarket owner, with conducting business on Sundays in violation of G. L. c. 136, § 5, did not support the defendant's claim that it had been the target of selective prosecution either because of a · police practice of issuing citations only as a result of complaints by competitors or because of a decision to prosecute based on the store owner's national origin. [229-234]

The exception added to G. L. c. 136, § 6, by St. 1977, c. 722, either alone or taken together with the other exceptions contained in § 6, did not create impermissible classifications or undercut the legitimate State interest of providing for a common day of rest so as to offend either the equal protection or due process provisions of the Federal and State Constitutions. [234-235]

COMPLAINTS received and sworn to in the Southern Essex Division of the District Court Department on September 22, October 3, October 21, and December 5, 1980.

On appeal to the jury session of the First Essex Division, a motion to dismiss was heard by *Furnari, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Linda G. Katz,* Assistant Attorney General, for the Commonwealth.

*Francis J. Tobin (Thomas F. Kiley* with him) for the defendant.

NOLAN, J. The Commonwealth appeals from the dismissal of twelve complaints brought against the defendant for violations of G. L. c. 136, § 5, commonly known as the "Sun-

day closing laws." The complaints were dismissed after a two-day hearing in the District Court in which the defendant challenged the prosecution as violative of due process and equal protection requirements under both the Federal and Massachusetts Constitutions because the exceptions created by G. L. c. 136, § 6, are so arbitrary and vague as to sever the law's connection with a legitimate State purpose. On the basis of evidence adduced at this hearing, however, the District Court judge, without ruling on the constitutional challenge, dismissed the complaints on the ground that the "circumstances of the case are clearly . . . of selective enforcement." The motion to dismiss the complaints should have been denied. We hold that the defendant failed to demonstrate selective enforcement and that the defendant also failed to rebut the presumption of constitutionality attaching to the statute.[1]

The defendant is a supermarket which has been doing business in Lynn since 1979. The store employs approximately seventy people on two shifts with twenty-five to thirty people working during peak periods. The store has six aisles of shelving for food and other sundry items plus a meat counter. The defendant was cited for violations occurring on twelve of the fourteen Sundays between August 10, 1980, and November 9, 1980. Each complaint was issued after personnel from the Lynn police department purchased a nonexempt item.[2]

*Selective enforcement claim.* The equal protection principles of the Fourteenth Amendment to the United States Constitution and arts. 1 and 10 of the Massachusetts Decla-

---

[1] Because the issue has been fully addressed in the arguments and briefs, we assume, without deciding, that the issue of the law's constitutionality is properly before us. Cf. *Shell Oil Co.* v. *Revere*, 383 Mass. 682, 685 (1981).

[2] The statute, however, does not require that a defendant sell a nonexempt item to be in violation but that it conduct business on Sunday without coming under one of the fifty exemptions listed in G. L. c. 136, § 6, as then amended through St. 1977, c. 722. The law has since been amended by St. 1982, c. 556, to allow retail stores, with certain exceptions, to remain open on Sundays.

ration of Rights prohibit discriminatory application of impartial laws. *Yick Wo* v. *Hopkins*, 118 U.S. 356, 373-374 (1886). *Commonwealth* v. *King*, 374 Mass. 5 (1977). In *Commonwealth* v. *Franklin*, 376 Mass. 885, 894 (1978), we set forth a tripartite burden on one who asserts selective enforcement of the criminal law: (1) a broader class of persons than those prosecuted has violated the law; (2) the failure to prosecute was either consistent or deliberate; and (3) the decision not to prosecute was based on an impermissible classification such as race, religion, or sex.

We will treat with deference the subsidiary findings of the judge if we find that they are warranted by the evidence. *Commonwealth* v. *Murphy*, 362 Mass. 542, 547 (1972). However, we are not bound by his ultimate findings and conclusions of law. *Commonwealth* v. *Mahnke*, 368 Mass. 662, 667, cert. denied, 425 U.S. 959 (1975). We hold that the facts found by the judge do not permit the conclusion that the Commonwealth was guilty of selective enforcement.

The judge stated in his findings that in the summer of 1980, one of the defendant's competitors complained to the Lynn police department that the defendant store was open for business on Sunday.[3] He further found that the chief of police of Lynn called a corporate officer of the Franklin Supermarket, Ernest Yanakakis, a "money hungry Greek" when they met following the complaint.[4] It is apparent from the defendant's argument on appeal and from the record that the only arguable basis for a claim of impermissible classification was either the police practice of issuing citations only as a result of complaints filed by competitors, see *State* v. *Anonymous*, 33 Conn. Supp. 55 (C.P. 1977); *People* v. *Acme Mkts.*, 37 N.Y.2d 326 (1975), or a conclusion that the decision to prosecute the defendant and not others was

---

[3] The police chief has since retired and, according to the defendant's counsel, was unavailable to testify at trial because he had relocated to Arizona.

[4] The transcript of the hearing indicates that Yanakakis testified only that the police chief called him "money hungry." Since the judge used the phrase "money hungry Greek" we will assume that that phrase was used.

the result of an impermissible classification based on national origin. Art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106. See *Commonwealth* v. *Franklin, supra,* and cases cited.

Yanakakis, who described himself as an "owner, operator" of the store testified that the police issued citations to the store only after a competitor, Star Market, complained that the store was in violation of G. L. c. 136, §§ 5, 6. The judge's findings indicate that "the Lynn Police received a complaint from one of the National Supermarket chains that several supermarkets of the intermediate size (more than 3 regular employees) were open for business in violation of the Sunday laws." He also found that "[t]he Lynn Police Department instituted a crackdown," but he did not indicate which, if any, stores other than the defendant were investigated or cited. However, Yanakakis testified that police had issued "three or four" citations against Bavardi's, a supermarket in Lynn employing from five to seven people on Sundays, and one citation against Osco, a drugstore.[5] He testified that the police had initiated the complaint against Bavardi's[6] but not until after Franklin Supermarket was cited, and that the Osco citation was issued only after he had signed a complaint. On cross-examination Lynn police per-

---

[5] The defendant has submitted with its brief certified copies of two complaints against Osco Drug, Inc., dated June 22, 1980. Yanakakis also had previously testified that he purchased nonexempt items at two Osco stores in Lynn on that date. He stated that the case against Osco was continued without a finding on September 15, 1980, on condition that Osco comply with G. L. c. 136, § 5. Yanakakis testified that Osco complied for two weeks but then returned to its practice of violation.

[6] According to Yanakakis's testimony, the defendant store was open for business on Sundays starting in May, 1980. After four weeks of operation, a Lynn police officer came to the store and informed Yanakakis that Star Market had complained about the store's being open but that no complaint would issue if the store would close. The store did close and remained closed on Sundays until August 9, 1980. In June, 1980, Yanakakis met two or three times with the police chief and told him that it was unfair that the law was being enforced against him but not against his competitors. He asked the chief to enforce the law against his competitors, but the chief refused. It was during one of these meetings that the chief allegedly called him a "money hungry Greek."

sonnel testified that at about the time they visited Franklin Supermarket they had also conducted inspections for violations at other stores in Lynn, including Osco, Bavardi's, and Snell's (a store employing five persons on Sunday, according to Yanakakis) and that citations for violations had been issued against Bavardi's.[7]

The judge made no findings concerning either the police inspections or the issuance of citations to other stores. While he need not have believed the police witnesses' testimony on these matters, the statement of Yanakakis that Bavardi's was cited is an admission that Franklin Supermarket was not the only store cited.[8] It is apparent that this evidence, and the police witnesses' testimony, if believed, would belie any notion that the Lynn police department enforced the Sunday closing laws only when competitors complained about the defendant. There is also nothing in the record, other than the testimony of Yanakakis, which affirmatively suggests that the Lynn police employed a policy of not enforcing the Sunday closing laws except when a competitor complained. While the three police witnesses indicated they had never issued citations for Sunday closing violations prior to citing the defendant,[9] there was nothing to indicate that there were prior violations,[10] or that there was any pol-

---

[7] One of the police witnesses testified that he also issued one citation against Snell's.

[8] Yanakakis also testified that he had read in the newspaper that Snell's and other stores in Lynn had been investigated for violations following his meetings with the police chief.

[9] One of the police witnesses testified she had investigated a furniture store for violations in or about 1975.

[10] Yanakakis testified that there were other stores in Lynn open on Sundays in violation of the Sunday closing laws at about the time his store was cited. However, no evidence was introduced to indicate that the alleged violators were not cited. And although the prosecutor stated at the hearing that "they stopped requesting the officers to go into the stores on Sundays. There have been no complaints that have been brought forward on anything since at least the end of 1980," there is no evidence that the Lynn police were aware of any violations occurring since that time. Other than Yanakakis's testimony, there is no evidence that any violations have occurred.

icy of nonenforcement in Lynn. That there might have been policies of nonenforcement in neighboring municipalities does not further the defendant's claim. See *McGowan* v. *Maryland,* 366 U.S. 420 (1961); *Zayre Corp.* v. *Attorney Gen.,* 372 Mass. 423, 428 n.10 (1977). Further, unlike the situations in *State* v. *Anonymous, supra,* and *People* v. *Acme Mkts., supra,* all but one of the defendant's violations were based on purchases made by police officers and the complaints signed by those officers.[11] "[L]aw enforcement officers enjoy considerable discretion in exercising some selectivity for purposes consistent with the public interest . . . ." *Commonwealth* v. *Franklin,* 376 Mass. 885, 894 (1978). The evidence indicates that the defendant employed fifteen people on Sunday, some five or six more than any other store in Lynn.[12] If the selection is not otherwise discriminatory, it would be appropriate for the Lynn police to pick out the major violator of a law to make an example "in the expectation that general compliance will follow and that further prosecutions will be unnecessary." *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 365 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts,* 407 U.S. 914 (1972), quoting *People* v. *Utica Daw's Drug Co.,* 16 A.D.2d 12, 21 (N.Y. 1962). On the basis of the testimony and the record before this court, we conclude that, as a matter of law, the defendant's evidence fails to raise a reasonable inference that any decision not to prosecute its competitors was based on a police policy not to enforce the laws unless a competitor complained.

---

[11] One complaint was issued on the basis of a purchase made by a police matron whose supervisor had signed six of the complaints.

[12] At one point, Yanakakis testified that he observed "nine to ten people" working in the Osco stores on Sunday. It is unclear whether he meant nine to ten people in each store or altogether. Later, however, he testified that "Osco is twice the size of our store." It is also unclear whether he was referring to Osco's physical size or number of employees. It is thus unclear how many were employed in the Osco stores on Sundays. At the least, the defendant was the next largest employer, other than Osco, open on Sundays in Lynn, concerning which there is any evidence.

There is nothing in the record to indicate that citations were issued to Franklin Supermarket simply because Yanakakis was of Greek heritage. There is also no showing by the defendant that the owners of any of the other stores mentioned in the testimony as having been investigated or cited by the police were not of Greek extraction. In short, there is no reasonable inference possible from the evidence that the decision, if there were one, not to prosecute others in the same position as the defendant, was based on an impermissible classification based on national origin.

*Constitutionality of the statute.* The defendant's argument on this issue is that "the entire scheme of G. L. c. 136, §§ 5 and 6, providing for a common day of rest" lacks any rational relation to a legitimate State purpose and creates arbitrary classifications between those stores allowed to remain open and those forced to close. In *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423, 437-438 (1977), we rejected similar challenges to the same law and concluded, in essence, that such laws are a valid exercise of police power. See *McGowan* v. *Maryland*, 366 U.S. 420, 449 (1961). At the time when *Zayre Corp.* was decided, § 6 contained forty-nine exceptions to the general prohibition contained in § 5. In 1977, the Legislature created a fiftieth exception which allowed all stores to open and sell all retail goods except alcoholic beverages on the Sundays following Thanksgiving and preceding Christmas provided that no employee would be required to work on Sunday and provided also that any employee who did choose to work would be paid one and one-half times his regular rate.[13] St. 1977, c. 722. See note 2, *supra.* Because of our decision in *Zayre Corp.*, we would

---

[13] It appears that the defendant's challenge to the statute has been spurred by successful challenges to similar statutes in other jurisdictions, one of which we discussed in *Zayre Corp., supra* at 435-436, and others decided since that time. See *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304 (1979); *People* v. *Abrahams*, 40 N.Y.2d 277 (1976); *Kroger Co.* v. *O'Hara Township*, 481 Pa. 101 (1978). However, we must determine the validity of our statute on the basis of its history, structure, local experience in its administration, as well as on the record before the court. *Zayre Corp.* v. *Attorney Gen., supra* at 436.

limit our consideration here to those effects, if any, the addition of the fiftieth exception may have on the constitutionality of the statute. Although the defendant was not prosecuted under the fiftieth exception, we will assume, without deciding, that he has standing to raise this challenge.

Our consideration need not take us too far, however. Whether a challenge to a statute is based on equal protection grounds or on due process grounds, we presume that the statute is constitutional. See *Gallagher* v. *Crown Kosher Super Mkt.,* 366 U.S. 617, 624 (1961); *Commonwealth* v. *Chamberlain,* 343 Mass. 49, 51 (1961) (both cases raising constitutional challenges to an earlier version of G. L. c. 136, §§ 5, 6). Our standard of review is the same under the Fourteenth Amendment to the Federal Constitution as under the cognate provisions of the Massachusetts Declaration of Rights. See *Zayre Corp.* v. *Attorney Gen., supra* at 433 n.22; *Commonwealth* v. *Chamberlain, supra.* The person raising the constitutional challenge has the burden of proving the absence of any conceivable grounds which would support the statute. *Id.* at 51. The record before us discloses no evidence that G. L. c. 136, § 6 (50), as amended through St. 1977, c. 722, either alone or taken together with the other exceptions contained in § 6, creates impermissible classifications or so undercuts the legitimate State interest of providing for a common day of rest as to offend either the equal protection or due process provisions of the Federal and State Constitutions. The defendant's "burden is not sustained by generalities, whether of law or fact. The presumption of constitutionality can be overcome only by specific allegations." *Id.* at 52. We cannot conclude on this record that the presumption of the statute's constitutionality has been overcome.

The order allowing the motion to dismiss the complaints is reversed. The case is remanded to the District Court for proceedings consistent with this opinion.

*So ordered.*