OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Due Process of Law*, Notice, Taking of property. *Constitutional Law*,
Equal protection of laws, Taking of property. *Taxation*, Real estate
tax: foreclosure of right of redemption. *Real Property*, Ownership, Tax
title, Foreclosure of tax title. *Nantucket*.

General discussion of the due process considerations and standards set
forth in decisions of the United States Supreme Court with respect to
the enactment of legislation purporting to terminate certain interests in
real property without notice to the persons holding those interests.
[1217-1221]
Proposed legislation foreclosing all rights of redemption in certain land to
which the town of Nantucket holds or has conveyed a tax title, to be
effective one year after enactment, would create a self-executing rule of
law of general application and on its face would violate no Federal or
State due process requirements with respect to notification of the gen-
eral class of persons holding such interests in the affected land. [1221-
1223]
Proposed legislation foreclosing all rights of redemption in certain land
only in the town of Nantucket would involve a geographical classifica-
tion that is rationally related to legitimate State interests (i.e., the col-
lection of property taxes, the stability of tax titles, the efficient and final
determination of disputes concerning such titles and the reduction in
litigation over the status of old tax titles in Nantucket) and is not arbi-
trary or invidious; therefore the proposed legislation on its face would
not violate the equal protection provisions of the United States Consti-
tution or the Massachusetts Constitution. [1223-1227]

On November 29, 1990, the Justices submitted the follow-
ing answers to questions propounded to them by the House of
Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court
respectfully submit these answers to the questions set forth in

an order adopted by the House of Representatives on August 29, 1990, and transmitted to us on August 30, 1990. The order recites that there is now pending before the General Court a bill (House No. 6120) entitled "An Act further regulating tax titles in the town of Nantucket."

The proposed legislation (presented to the Legislature pursuant to a home rule petition) provides as follows:

"SECTION 1. Whenever the town of Nantucket has conveyed or sold any land or holds a tax title pursuant to chapter sixty of the General Laws by any instrument in writing conveying or taking or purporting to convey or to take such land, and said instrument is duly recorded in the registry of deeds for the district wherein such land is situated and a period of forty years elapses after the instrument is accepted for record, and the notice or procedure for taking and sale or conveyance under said chapter or the instrument or record thereof because of defect, irregularity, or omission, fails to comply in any respect with any requirement of law relating thereto, including a failure by the town to foreclose the right of redemption, the instrument or record thereof shall, notwithstanding such defects, irregularities or omissions be effective for all purposes and shall operate to foreclose all rights or [sic] redemption to the same extent as though such notice or procedure or the instrument or record thereof had originally not been subject to any such defects, irregularities, or omissions, unless an instrument of redemption has been recorded prior to the effective date of this act.

"SECTION 2. The provisions of this act shall only apply to instruments recorded prior to July first, nineteen hundred and forty-eight, and shall have no effect on any legal proceeding commenced prior to the effective date of this Act in the courts of this Commonwealth in which a party has appeared asserting a cause of action claiming the right to redeem.

"SECTION 3. This act shall.take effect one year after the date of its enactment."

The order transmitted to us asserts that grave doubt exists as to the constitutionality of the bill if enacted. into law and propounds the following questions:

"Question 1. Does the provision in said bill regarding foreclosing all rights of redemption regardless of a failure to comply with notice and the procedures for taking and sale or conveyance, including a failure by the town to foreclose the right of redemption violate due process under Article X of Part the First of the Constitution of the Commonwealth?

"Question 2. Does the provision in said bill regarding foreclosing all rights of redemption regardless of a failure to comply with notice and the procedures for taking and sale or conveyance, including a failure by the town to foreclose the right of redemption violate due process under the Fourteenth Amendment to the Constitution of the United States?

"Question 3. Would said bill which forecloses only rights of redemption of land in the town of Nantucket deny to those persons whose rights are foreclosed equality of rights under Article I of Part the First of the Constitution of the Commonwealth?

"Question 4. Would said bill which forecloses only rights of redemption of land in the town of Nantucket deny to those persons whose rights are foreclosed equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States?"

1. *Due process considerations.* Question 1 involves due process under art. 10 of the Massachusetts Declaration of Rights, and question 2 involves due process under the Fourteenth Amendment to the United States Constitution. Because "[t]he protection afforded property interests by both provisions is subject to the same analysis," *School Comm. of*

*Hatfield* v. *Board of Educ.*, 372 Mass. 513, 515 n.2 (1977), we shall make no specific distinctions for the purposes of our opinion, see *Pinnick* v. *Cleary*, 360 Mass. 1, 13-14 n.8 (1971), and shall address questions 1 and 2 in a single discussion of due process. See *Nantucket Conservation Found., Inc.* v. *Russell Management, Inc.*, 380 Mass. 212, 215 (1980).

The bill provides in pertinent part, only as to instruments recorded prior to July 1, 1948, that, "[where] the town of Nantucket has conveyed or sold any land or holds a tax title . . . and such instrument is duly recorded . . . and the notice and procedure for taking and sale or conveyance under said . . . instrument . . . because of defect, irregularity, or omission, fails to comply . . . with any requirement of law relating thereto . . . the instrument . . . shall, notwithstanding such defects, irregularities or omissions be effective for all purposes and shall operate to foreclose all rights . . . unless an instrument of redemption has been recorded prior to the effective date of this act. . . . This act shall take effect one year after the date of its enactment."[1] Through these provisions the bill on its face purports to terminate certain property interests without specific notice to the holders of those interests. Therefore, a question exists whether the bill on its face violates due process requirements.

"*Mullane* v. *Central Hanover Bank & Trust Co.* [339 U.S. 306, 314 (1950)], established that state action affecting property must generally be accompanied by notification of that action: 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Tulsa Professional Collection Serv., Inc.* v. *Pope*, 485 U.S. 478, 484 (1988). We have no doubt that the pro-

---

[1]Despite the use of both the singular and the plural forms of the words "defect, irregularity, or omission," we do not read the proposed bill as requiring multiple problems before the statute would have application.

posed bill does refer to a substantial property interest — the right to redeem real property. Less clear, however, is whether passage of the bill would trigger the attachment of any due process rights in the first instance with or without regard to the presence of State action.

"The due process standards of *Mullane* apply to an 'adjudication' that is 'to be accorded finality.' The Court in *Mullane* itself distinguished the situation in which a State enacted a general rule of law governing the abandonment of property. It has long been established that 'laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly,' *Grayned* v. *City of Rockford*, 408 U.S. 104, 108 [1972], but it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights." (Footnote omitted.) *Texaco, Inc.* v. *Short*, 454 U.S. 516, 535-536 (1982). Thus, "if the [challenged] governmental conduct [is] legislative, the property owner has no procedural due process rights. 'When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process — the legislative process. The challenges to such laws must be based on their substantive compatibility with constitutional guarantees.' The large number of people affected by the legislative process ensures that the ·legislature will act reasonably." (Citation omitted.) *County Line Joint Venture* v. *Grand Prairie*, 839 F.2d 1142, 1144 (5th Cir.), cert. denied, 488 U.S. 890 (1988). See *Tulsa Professional Collection Serv.* v. *Pope, supra* at 485-486 ("Nor is the State's involvement in the mere running of a general statute of limitations generally sufficient to implicate due process").

In the *Texaco* case, the United States Supreme Court applied these principles in analyzing a due process challenge to a statute similar in some respects to the proposed bill. There, owners of severed mineral interests challenged the application of a State lapse statute that automatically extinguished any mineral interest that had not been used for a period of

twenty years. The statute did not provide for notice to the
owner of the mineral interest prior to the lapse. The mineral-
interest owners claimed a denial of procedural due process on
the basis that the State failed to notify them of the require-
ment of the new law. The Court rejected the argument. The
Court stated that "[i]t is well established that persons own-
ing property within a State are charged with knowledge of
relevant statutory provisions affecting the control or disposi-
tion of such property." *Texaco, Inc. v. Short, supra* at 532.
The Court noted further that the statute stated a general
rule of law, self-executing in nature, that governed the aban-
donment of property. *Id.* at 535. The Court concluded that
such a statute did not trigger constitutional notice require-
ments because those requirements pertained to judicial adju-
dications of property that were to be accorded finality. *Id.*
The Court also stated that "a legislature need do nothing
more than enact and publish the law, and afford the citizenry
a reasonable opportunity to familiarize itself with its terms
and to comply." *Id.* at 532. A two-year grace period that
allowed an owner to protect an interest foreclosed any argu-
ment that the owner did not have a reasonable opportunity to
familiarize himself with the law. *Id.* at 532-533.

In *Tulsa Professional Collection Serv. v. Pope, supra*, the
United States Supreme Court considered a challenge to a
State probate nonclaim statute that barred creditors' claims
against an estate unless the claim was brought within two
months of newspaper publication of notice of the judicial ap-
pointment of the representative of an estate. The Court con-
cluded that, in the absence of actual notice to creditors
whose names and addresses were ascertainable, due process
would not be satisfied. *Id.* at 490-491. Distinguishing *Tex-
aco, Inc. v. Short, supra*, the Court emphasized that the non-
claim statute was not self-executing in nature but depended
on significant action by a State probate court to trigger the
time bar. *Id.* at 487. "Where the legal proceedings them-
selves trigger the time bar, even if those proceedings do not
necessarily resolve the claim on its merits, the time bar lacks
the self-executing feature that [the] *Short* [decision] indi-

cated was necessary to remove any due process problem. Rather, in such circumstances, due process is directly implicated and actual notice generally is required." *Id.* For other cases involving State infringements of property rights, see *Mennonite Bd. of Missions* v. *Adams*, 462 U.S. 791, 799-800 (1983) (assuming that State action is present in a statutory tax sale proceeding involving county auditor and treasurer, and judicial proceedings to quiet title); *Christian* v. *Mooney*, 400 Mass. 753, 760-762 (1987), cert. denied, 484 U.S. 1053 (1988) (assuming, for purposes of Federal due process, that State action is present in judicial decree of title registration); *Napier* v. *Springfield*, 304 Mass. 174, 179 (1939) (assuming, for purposes of Federal due process, that State action is present in statutory valuation determination by tax commissioner followed by sale by city treasurer).

The proposed bill more nearly resembles the self-executing lapse statute considered in *Texaco, Inc.* v. *Short* than the statutes or statutory schemes involved in the *Tulsa* and *Mennonite* cases and other cases like them. In the latter cases, State-sponsored judicial and administrative proceedings were necessary fully to implement and conclude the proceedings that affected the claimed property interests. By contrast, the proposed bill will be fully effective, by its own terms, one year after enactment. We are of opinion that, like the *Texaco* lapse statute, the bill creates a rule of general application, the operation and effects of which are the "predictable result of the interest holder's . . . failure to comply with a specific requirement for the retention of [his] rights," *Davis Oil Co.* v. *Mills*, 873 F.2d 774, 786 (5th Cir.), cert. denied, 493 U.S. 937 (1989), rather than the result of some final adjudication by administrative or judicial authorities of the State or other action which, under the Massachusetts Constitution, might constitute an infringement of due process.[2]

---

[2]It bears mention that the proposed bill seeks to fashion a practical solution with respect to old tax titles and takings in which owners appear to have made no effort to redeem or reinstate their rights. This approach is consistent with the fact that many of the rights governed by the statute may have been abandoned, a consideration which is like the one that un-

Nor is the one-year limitation period provided for in the bill unreasonable or arbitrary. While we have no way of knowing the specific factual circumstances to which the statute may apply, we believe, in view of the age of the tax proceedings involved, that the Legislature reasonably could decide that one year is a sufficient amount of time for an interested party to become familiar with the provisions of the statute and to take steps to protect his interests. See *Texaco, Inc.* v. *Short, supra* at 532 ("A legislative body is in a far better position than a court to form a correct judgment concerning . . . the likelihood that innocent persons may be harmed by the failure to receive adequate notice [of a change in the law]"). See also *Saranac Land & Timber Co.* v. *Comptroller of N.Y.*, 177 U.S. 318, 324 (1900) (upholding six-month statutory period for redemption of tax titles).

Naturally, we do not read the bill as curing, or limiting an interest holder's right to challenge a defect, irregularity, or omission that goes to the very existence of title. While construing G. L. c. 60, § 80C, a statute that contains language identical in many relevant respects to the proposed bill, the court has stated that "the statute cannot cure a defect which is founded on a want of title. It is designed to correct defects, irregularities, and omissions *in procedure* or in an instrument of taking. The statute cannot supply title which did not exist at the time of taking." (Emphasis in original.) *Sheriff's Meadow Found., Inc.* v. *Bay-Courte Edgartown, Inc.*, 401 Mass. 267, 270 (1987), citing *Bartevian* v. *Cullen*, 369 Mass. 819, 821 (1976). The Legislature presumably was aware of these decisions when it drafted the proposed bill. See, e.g., *International Fidelity Ins. Co.* v. *Wilson*, 387 Mass. 841, 854 (1983); *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950).

---

derpinned the lapse statute considered in *Texaco, Inc.* v. *Short, supra.* This approach also may acknowledge that the state of the municipal records for the period of time encompassed by the bill is such that it is impracticable (if not impossible) for the town to cure any defects that exist in prior notice or proceedings, and that Nantucket clearly has a strong public policy interest in assuring the stability of its land titles and values. See note 6, and accompanying text, *infra.*

Therefore, as we interpret the proposed bill, it does not purport on its face to supply titles to Nantucket land that Nantucket was clearly powerless to take, but only limits the time within which those claiming rights based on errors in notice or procedure may present their claims.[3]

In sum, the proposed bill represents only a self-executing rule of law of general application, limited in its effects to errors in notice and procedure in old tax titles and takings, and providing those interest holders who wish to satisfy its terms sufficient opportunity to do so. The proposed bill would require no implementation by State authorities, no final adjudications or other action inconsistent with due process principles. Therefore, the proposed bill on its face violates no due process requirement. Accordingly, our answer to questions 1 and 2 is, subject to the considerations stated above, "No."

2. *Equal protection considerations.* Questions 3 and 4 seek guidance as to possible equal protection problems under the Fourteenth Amendment to the United States Constitution and art. 1 of the Massachusetts Declaration of Rights. As to equal protection under the Declaration of Rights, we note that such considerations may arise under other provisions besides art. 1. See, e.g., *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 229-230 (1983) (arts. 1 and 10); *Dickerson* v. *Attorney Gen.*, 396 Mass. 740 (1986) (arts. 1, 6, and 7). We shall treat question 3 as presented under the State Constitution generally and not limited to art. 1. Further, in deciding whether the proposed bill violates equal protection, we shall analyze the questions together, because "[f]or the purpose of equal protection analysis, our standard of review under the cognate provisions of the Massachusetts [Constitution] is the same as under the Fourteenth Amendment to the Federal Constitution." *Dickerson* v. *Attorney Gen.*, *supra* at 743.

---

[3]See, and compare our constructions of a somewhat similar statute, G. L. c. 60, § 37, *Bartevian* v. *Cullen*, 369 Mass. 819 (1976); *McHale* v. *Treworgy*, 325 Mass. 381 (1950); *Fall River* v. *Conanicut Mills*, 294 Mass. 98 (1936). See also *Boston* v. *Ditson*, 4 Mass. App. Ct. 323 (1976), cert. denied, 429 U.S. 1057 (1977).

The proposed bill on its face classifies tax titles according to the geographic location of the land to which they relate. The presence of this classification presents the question whether the proposed bill is facially invalid under the equal protection clause.

To begin with, we note that, as a general proposition, Legislatures need not create statutory classifications with surgical precision, because not all classifications are proscribed by the equal protection clause. "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." *Williamson* v. *Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955). Accord *Pinnick* v. *Cleary, supra* at 28. In fact, "the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. . . . State legislatures are presumed to have acted within their constitutional power despite the fact that . . . their laws result in some inequality." *McGowan* v. *Maryland*, 366 U.S. 420, 425-426 (1961). With these broad principles in mind, we turn to the specific standard of review applicable here.

Where legislative classification challenged as violative of the equal protection clause involves neither a suspect class nor a fundamental right, we review it only to determine whether it is rationally related to a legitimate State interest. See generally *San Antonio Indep. School Dist.* v. *Rodriguez*, 411 U.S. 1, 16-17 (1973); *Pinnick* v. *Cleary, supra* at 27-28. The proposed bill clearly involves no suspect class and, although we have referred in the past to "the fundamental right to own property," see *Lynnfield* v. *Owners Unknown*, 397 Mass. 470, 474 (1986),[4] for purposes of the equal pro-

---

[4]But see *Fragopoulos* v. *Rent Control Bd. of Cambridge, ante* 302, 306 (1990) ("[T]he right to use lawfully regulated property as one wishes has never been classified as a fundamental right, which can only be interfered with for a compelling governmental purpose"); R. Rotunda, J. Nowak, & J. Young, Constitutional Law Substance and Procedure §§ 15.7, 18.42 (1986) (noting that constitutional requirement of "fair adjudicative procedures" in connection with deprivation of property rights does not increase the substantive protection of those rights); Note, The Constitutionality of Rent Control Restrictions on Property Owners' Dominion Interests, 100

tection analysis that we conduct here, this bill implicates no fundamental, substantive constitutional right. Accordingly, we examine the bill only to determine whether the classification that it creates is rationally related to a legitimate purpose. See *Napier* v. *Springfield*, 304 Mass. at 180-181; *Mennonite Bd. of Missions, Inc.* v. *Adams*, 427 N.E.2d 686, 689 (Ind. Ct. App. 1981), reversed on other grounds, 462 U.S. 791 (1983). Cf. *Pennell* v. *San Jose*, 485 U.S. 1, 14 (1988) (rent control ordinance); *Texaco, Inc.* v. *Short, supra* at 538-540 (mineral rights lapse statute); *Franklin* v. *Spadafora*, 388 Mass. 764, 722-755 (1983) (condominium trust by-law); *Opinion of the Justices*, 383 Mass. 895, 916-917 (1981) (proposed act providing for relinquishment of Commonwealth's residual interests in Boston tidelands).[5]

As has been noted above, Nantucket has a legitimate interest in the collection of property taxes. Moreover, there is an acknowledged public interest in the stability of tax titles, see *Devine* v. *Nantucket*, 16 Mass. App. Ct. 548, 550 (1983), as well as in the "efficient and final determination" of disputes regarding such titles. *Sharon* v. *Kafka*, 18 Mass. App. Ct. 541, 543 (1984). In addition, the town has a legitimate interest in reducing the amount of protracted and expensive

---

Harv. L. Rev. 1067, 1071 (1987) (noting that the Supreme Court "has yet to hold that . . . any . . . property right is a fundamental *right*" [emphasis in original]).

[5]Another consideration supports the conclusion that the rational basis standard of review is appropriate here. We have said that "the only legitimate interest of a town in seeking to foreclose rights of redemption is the collection of the taxes due on the property . . . ." *Lynnfield* v. *Owners Unknown, supra* at 474. The bill before us obviously would serve this interest because it would render final certain old, albeit procedurally defective, tax takings. In this sense, the bill is a kind of tax statute, and it has long been the rule that "[a]ny distinction in a tax statute that has a rational basis will survive a challenge under the equal protection clause." *Liberty Mut. Ins. Co.* v. *Commissioner of Revenue*, 405 Mass. 352, 358 (1989), cert. denied, 110 S. Ct. 1523 (1990), quoting *Smith* v. *Commissioner of Revenue*, 383 Mass. 139, 141, appeal dismissed, 454 U.S. 804 (1981).

litigation that has developed over the status of old tax titles in Nantucket.[6] All these are legitimate legislative objectives.

The bill proposes to achieve these objectives by limiting the time within which redemption proceedings related to procedurally defective titles (taken before 1948) may be brought. This approach would rationally further the bill's legitimate goals. The bill would finalize ancient or old takings, thereby serving the public interest in the stability of the affected titles. The bill also would insulate a number of procedurally defective titles from legal challenge, thereby efficiently and finally determining the status of those titles short of litigation.

The fact that the bill is limited in its operation to titles related to land in Nantucket only, considering the circumstances, does not render it invalid under the equal protection clause. The problem of procedurally defective tax titles in Nantucket is a large-scale problem apparently because for decades (if not centuries) Nantucket landowners commonly held "minute fractional interests" in large tracts of land, see *Hardy* v. *Jaeckle*, 371 Mass. 573, 580 (1976), and the town failed carefully to observe formal procedures in the taking of tax titles. The effects of this tradition of administrative laxity (which were compounded by the often complicated nature of land ownership in Nantucket), combined with the tremendous increase in land values in recent years, have spawned a large volume of speculation in old tax titles that, while not absolutely limited to Nantucket (see, e.g., *Krueger* v. *Devine*, 18 Mass. App. Ct. 397 [1984]), has been particularly troublesome and expensive there, as the number of reported and pending cases referred to above suggests. In view of these

---

[6]Over roughly the past ten years, Nantucket has experienced a phenomenal increase in the value of property. This has led to considerable speculation in questionable tax titles, which in turn has led to widespread litigation. Several of these cases have found their way to the Appeals Court or to this court. See *Christian* v. *Mooney*, 400 Mass. 753 (1987); *Nantucket* v. *Beinecke*, 379 Mass. 345 (1979); *Hardy* v. *Jaeckle*, 371 Mass. 573 (1976); *Devine* v. *Nantucket*, 16 Mass. App. Ct. 548 (1983). Apparently, many more are pending before the Land Court.

special conditions, the Legislature could reasonably decide that Nantucket tax titles require special treatment. In these circumstances, a classification distinguishing between geographical areas does not violate equal protection strictures. See., e.g., *Holt Civic Club* v. *Tuscaloosa*, 439 U.S. 60, 70-71 (1978); *McGowan* v. *Maryland, supra* at 427; *Walsh* v. *Massachusetts*, 618 F.2d 156, 158 (1st Cir. 1980); *Begley* v. *Board of Appeal of Boston*, 349 Mass. 458, 459-461 (1965).

The bill has legitimate purposes, all of which are rationally related to the means proposed to achieve them. Those means include a classification that is neither arbitrary nor invidious. Therefore, the proposed bill on its face is not violative of the equal protection provisions of the United States Constitution or of the Massachusetts Declaration of Rights. Accordingly, our answer to questions 3 and 4 is "No."

The foregoing opinions and answers are submitted by the Chief Justice and the Associate Justices subscribing hereto on the twenty-ninth day of November, 1990.

> PAUL J. LIACOS
> HERBERT P. WILKINS
> RUTH I. ABRAMS
> JOSEPH R. NOLAN
> NEIL L. LYNCH
> FRANCIS P. O'CONNOR
> JOHN M. GREANEY