Altha Dell WILLEY and Fanny Shurden, Plaintiffs,

v.

MABEN MFG., INC., Phillip Criwell and Johnny Linley, Defendants.

No. EC 78–69–S–O.

United States District Court, N. D. Mississippi, E. D.

Aug. 22, 1979.

James M. Ward, Ward & Ward, Starkville, Miss., for plaintiffs.

William E. Hester, III, Kullman, Lang, Inman & Bee, New Orleans, La., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was tried to the court without a jury. After receipt of post-trial memoranda, the action is now ripe for decision.

This memorandum will contain the court's findings of fact and conclusions of law for which provision is made in Rule 52(a), Fed.R.Civ.P.

There are two plaintiffs, Mrs. Altha Dell Willey (hereafter "Willey") and Mrs. Fanny Shurden (hereafter "Shurden"). They are adult resident citizens of the Northern District of Mississippi.

The defendant is Maben Manufacturing Company, Inc. (hereafter "Maben"), a Mississippi corporation. Maben is engaged in manufacturing upholstered chairs at its plant in Maben, in the Northern District of Mississippi.

Maben qualifies as an "employer" subject to the provisions of The Civil Rights Act of 1964, Subchapter VI—Equal Employment Opportunities, 42 U.S.C. § 2000e, et seq.[1]

The court has jurisdiction of the subject matter of the action by virtue of Section 706(f)(3) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(3).

Plaintiff Willey was employed at Maben as a seamstress from December 5, 1975, until October 13, 1976, when she was terminated.

Plaintiff Shurden, Mrs. Willey's daughter, was employed by Maben from October 16, 1975, until October 13, 1976 when she was terminated.

Plaintiffs Willey and Shurden, were terminated by Maben on October 13, 1976, for the reason that they were charged by Maben with taking an unauthorized leave of absence from their work for more than three consecutive days.

The controversy arises over the contention by plaintiffs that Maben violated the provisions of the Civil Rights Act of 1964, by discriminating against them because of their religious beliefs.[2]

When plaintiffs started to work for Maben, they informed a member of Maben's supervisory staff that they were members of the Worldwide Church of God; that a tenet of that religion is that one must observe the Sabbath by refraining from performing any work from sunset on Friday until sunset on Saturday; and that another tenet is that one must observe the Day of Atonement and attend the Feast of Tabernacles each year.

The pre-trial order entered herein contains stipulations which support a finding by the court that Maben had an unwritten policy regarding religious accommodation for its employees to the effect that Maben would attempt to accommodate the religious beliefs of its employees whenever such accommodation is reasonably requested by an employee and does not adversely affect Maben's ability to produce its product. In fact, the evidence is uncontradicted

---

1. An employer subject to the Act is described in 42 U.S.C. § 2000e(b) as

    The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, . . .

2. 42 U.S.C. § 2000e–2(a)(1) provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . .

that Maben has recognized the religious beliefs of its employees who are, or have been, members of the Worldwide Church of God and on previous occasions has extended the accommodations necessary for such employees to give adherence to their religious beliefs. Employees who are members of the Worldwide Church of God have not been required to work on Saturdays and in 1975, one of its employees, a member of that Church, was given a leave of absence enabling her to observe the Day of Atonement and the Feast of Tabernacles.

Maben's position is that plaintiffs' notice of their intention to attend the Feast of Tabernacles was not given in time for Maben to arrange for someone to perform their work, and the request could not be honored without substantial economic loss.

The evidence shows that Maben's supervisory personnel knew when plaintiffs came to work at Maben, that plaintiffs would request time off to observe the Day of Atonement and attend the Feast of Tabernacles.[3]

In the Spring of 1976, plaintiffs received notice from their Church of the dates that the Day of Atonement and the Feast of Tabernacles would be held in 1976 and the site of the convention held in connection with the Feast of Tabernacles.

Defendant's witness, Johnny Linley, Maben's plant superintendent, was informed some time prior to October 1, 1976, by one of defendant's supervisors, Joe Pepper, that one of the plaintiffs had informed him of their desire to have a leave of absence to observe the Day of Atonement and the Feast of Tabernacles. Pepper was not clothed with authority to act upon the request and Linley instructed Pepper to inform plaintiffs they would have to contact him about the matter.

Linley testified that plaintiffs did not contact him, and he did not give the request a second thought, until plaintiffs came forward with the request on Friday, October 1, 1976.

Linley testified he had no plans for plaintiffs to be absent because they did not follow Pepper's instructions.

There is a direct conflict in the evidence as to Linley's knowledge that plaintiffs desired a leave to observe the Day of Atonement and Feast of Tabernacles.

Plaintiff Willey testified that on September 1, 1976, she met with Linley about a different matter, and, in the course of the conversation told him that plaintiffs would need to be absent for the religious holidays, to which request Linley said there would be no difficulty in that regard. Linley categorically denies that this occurred. He testified positively and emphatically that the first request came from plaintiff Shurden on October 1, 1976. Plaintiff Willey's testimony is just as positive that she mentioned the request to Linley on September 1, 1976.

Both parties advance cogent arguments on the issue presented by the conflict. The evidence supporting plaintiffs' position does not, in the judgment of the court, preponderate over that submitted by defendant. Such being the case, plaintiffs must fail on the issue.

Plaintiffs failure to convince the court by a preponderance of the evidence that plaintiff Willey made known to plant manager Linley, on or about September 1, 1976, that she and plaintiff Shurden desired a leave of absence to observe the Day of Atonement, and attend the Feast of Tabernacles, is not, however, fatal to their case.

The court holds that when plaintiffs were employed by Maben, management was informed that plaintiffs were members of the

---

3. This period usually extends for two weeks. The parties stipulated that, in 1976, the year in question, the Day of Atonement, based on the Biblical text and fixed according to the Jewish Calendar, fell on Monday, October 4; the Feast of Tabernacles, was an eight-day convocation from Friday, October 8 through Friday, October 15. During this last period, plaintiffs felt that they were required to abstain from secular work the first and last days and to attend a religious convention for the whole week which for that year was held in St. Petersburg, Florida. The attendance of the convention in Florida required travel time for plaintiffs who lived in Mississippi.

Worldwide Church of God, and, as such, were required by the tenets of the Church, to observe the Day of Atonement, and attend the Feast of Tabernacles.

Linley was informed by Pepper that plaintiffs expected leaves of absence to observe the Day of Atonement and attend the Feast of Tabernacles. Although Linley dismissed the notice from his mind, Maben was under a duty to accommodate the religious beliefs of plaintiffs and Linley's failure to recall the Pepper incident does not excuse Maben or relieve it of the obligation imposed by law.[4]

Plaintiffs requested a leave of absence to begin on Monday, October 4, 1976, and continue through October 18, 1976. This period of absence from work was necessary so they could observe the Day of Atonement and attend the Feast of Tabernacles. Linley refused their request and informed them that Maben needed them to maintain plant production schedules. Maben had a policy that unexcused absences from work resulted in termination. Plaintiffs were informed that should they persist in taking time off from work to observe the religious days, they would be terminated. When plaintiffs left their work to attend the religious ceremonies, they were terminated according to company policy on October 13, 1976.

Plaintiffs returned to the plant to work on October 18, 1976, but were refused permission to assume their duties. They were not rehired, because they did not file formal applications for work in accordance with company policy. Replacements for plaintiffs were acquired by defendant on October 13, 1976. Maben contends that 8 production days were lost because of the absence of plaintiffs. Plaintiff Willey worked on "cushions" for the chairs produced by

Maben. Plaintiff Shurden worked on the "backs". Each is a component part of the finished product.

The evidence does not convince the court that the granting of leave to plaintiffs would have created "undue hardship on the conduct of [Maben's] business.[5] It must be borne in mind that defendant's only excuse for refusing to extend authorized leaves was that the requests were not timely. However, as mentioned above, management knew that plaintiffs expected to be off from work to observe the Day of Atonement and attend the Feast of Tabernacles. Having this knowledge, the record does not reflect that Maben made reasonable efforts to obtain replacements for plaintiffs or utilize plaintiffs' services the few days in which plaintiffs were available for work during the period between the Day of Atonement and the Feast of Tabernacles.

Maben's calculation that plaintiffs' absence from work would result in loss to Maben in its finished goods inventory of $37,500 (reduced to $30,000 as Maben was able to hire two new employees for plaintiffs' department after plaintiffs missed 8 production days) does not appear to be realistic. The record reflects that plaintiffs would have worked three of these days, had Lindley requested them to do so. There was no proof offered that Maben made a reasonable effort to replace plaintiffs before hiring two replacements on October 13, 1976. There was also evidence that a back-log of cushions and backs existed in inventory at the time plaintiffs requested the leaves of absence.

Defendants' case was based upon the untimeliness of notice. As a matter of fact, defendants asserted that the leaves of absence would have been granted, had timely requests been presented to the company

---

4. 42 U.S.C. § 2000e(j) provides:

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

5. In *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), the Supreme Court said "[t]o require TWA to bear more than a de minimis cost in order to give Hardison Saturdays off is an undue hardship." 432 U.S. at 84, 97 S.Ct. at 2277.

official authorized to grant them. The evidence does not, however, as the court has observed, support this position. Company officials acquired knowledge prior to October 1, of the need by plaintiffs for time off to observe the religious holidays. Maben could have accommodated their needs without undue hardship.

The court concludes that plaintiffs are entitled to recover such damages as they may have sustained as the proximate result of their discharge by defendant. At trial, both plaintiffs stated they were not seeking reinstatement. Their demand is limited to loss of earnings from the date of discharge until other employment was obtained, less interim earnings.[6]

The evidence introduced at trial reflects that plaintiff Willey was making an average of $500 per month with Maben at the time of her discharge.[7] She earned $3,534.45 in 1977,[8] and $3,952.17 in 1978.[9]

Plaintiff Willey did not seek reinstatement. In light of plaintiff Willey's employment record from the date she returned to work on October 18, 1976, through the calendar years 1977 and 1978, the court holds defendant is not liable for any diminution in earnings after Willey obtained regular employment at Arnold's during 1977. Plaintiff Willey appeared to have succeeded in obtaining regular employment at Arnold's during 1977.

The court holds that plaintiff Willey is entitled to recover the sum of $2000 in damages, $1250 in loss of wages for 1976 and $750, diminution of wages in 1977. She is not entitled to recover punitive damages.

Plaintiff Shurden did not try for a while to obtain other employment. In November 1976, she made application for work in a plant to be established at Mathiston, Missis-sippi. In 1977, she managed to earn $3,022.79, and in 1978, the sum of $6,352.05. Plaintiff Shurden is entitled to recover for the loss in wages during 1977. Since she did not make an effort to secure employment during the latter part of 1976, she cannot recover for loss of earnings during this period. The court has concluded that the sum of $1500 will fully compensate plaintiff Shurden for loss of wages in 1977, attributable to her discharge by defendant. She is not entitled to recover punitive damages.

Plaintiffs are entitled to recover their costs of suit, and a reasonable attorney's fee for their attorney. 42 U.S.C. § 2000e–5(k).

The court will delay the entry of final judgment pending the determination of a reasonable fee for the plaintiff's attorney. If the parties cannot agree on the fee, plaintiff's attorney shall, within 30 days from this date, file a motion for the allowance, supporting the same with an itemization of his charges, properly verified, and affidavits from knowledgeable attorneys regularly practicing in this court as to the reasonableness of the charges.

The defendants may contest the allowance with similar proof, the same to be presented within 20 days after service of plaintiffs' demands.

---

6. Section 2000e–5(g) Title 42, provides in part: [I]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. . . .

7. Willey's W–2 Form with Maben for the first 9 months of 1976, shows earnings of $4,674.19.

8. The W–2's presented, showed earnings in 1977 as follows:

Nelson Ind.—$196.07; Arnold's—$3,290.38, totalling: $3,486.45. To this must be added the sum of $48.00, paid her by Mr. Van Landingham—the total $3,534.45.

9. The W–2's presented showed earnings at Arnold's of $3,455.92 and at Kellwood, the sum of $496.25; totalling: $3,952.17.