Gwendolyn **BENNETT**, Plaintiff,

v.

**MONON TRAILER CORPORATION**, Defendant.

No. L 84–73.

United States District Court,
N.D. Indiana,
Hammond Division at Lafayette Division.

Aug. 5, 1985.

Thomas W. Munger, Lafayette, Ind., for plaintiff.

Henry J. Price, Ann M. Delaney, Indianapolis, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This action was commenced pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Jurisdiction of this court is predicated upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case was tried in Lafayette, Indiana, as a bench trial, on July 16 and 17, 1985, by very able and experienced counsel. In accord with the Seventh Circuit Judicial Council Resolution dated October 4, 1984, post-trial briefs were submitted to the court on July 29, and 30, 1985. This memorandum and order constitutes this court's findings of fact and conclusions of law for purposes of F.R.Civ.P. 52(a).

### I.

Plaintiff, Gwendolyn Bennett, was an employee of defendant, Monon Trailer Corporation. She began her employment on April 20, 1981 as a C-Laborer in the maintenance department, dayshift, Plant # 1. At trial and in post-trial brief the plaintiff spends considerable time and effort regarding the manner in which she was originally hired by this defendant. That issue and the evidence pertaining to it are well beyond the scope of the issues framed in the pleadings and pretrial order. Gwendolyn Bennett was also a member of the Worldwide Church of God and therefore observes the seventh day Sabbath from sundown Friday until sundown Saturday, in addition to numerous holy days during the year. Mrs. Bennett is not permitted by virtue of her religious beliefs to work either on her Sabbath or her holy days. Mrs. Bennett remained a first-shift maintenance employee, working the hours from 6:30 o'clock A.M. until 2:45 o'clock P.M. until she was laid off on October 18, 1982. At the time Mrs. Bennett was laid off, numerous other Monon employees were laid off also. When Mrs. Bennett was recalled on October 25, 1982, she went from that position to being a first-shift employee in the Used Trailer Division. She remained on first shift in Used Trailers for approximately five weeks until she was moved to second shift in Used Trailers during the end of November, the beginning of December 1982. It was at this time that the conflict between her employment schedule and her Sabbath day observances surfaced. Mrs. Bennett filed a grievance to protest the assignment by the company of points for her absence from sundown Friday until the end of the shift at 11:00 o'clock P.M. on Fridays. The company's written policy regarding absenteeism is as follows:

> For those absences authorized by the company and specifically set out in the contract, zero points are awarded; for those absences excused by the company but not following the limited category of authorized absences, ten points are awarded; for unexcused absences of a full day's duration, twenty points are awarded. For less than a full day's absence, the points would likewise be zero, five and ten for up to four hours absence.

The result of Mrs. Bennett's grievance was an agreement which was reflected in Defendant's Exhibit "M". That Agreement provided that no points would be as-

sessed when Gwendolyn Bennett was absent from sundown on Friday through the end of the shift at 11:00 o'clock P.M. on Friday. The Agreement further provided that no overtime pay would be paid to Gwendolyn Bennett until she had worked a forty hour work week. This agreement was to last for one month. On January 17, 1983, Gwendolyn Bennett, along with a number of other Monon employees, was again laid off. When she was recalled on January 21, 1983, Gwendolyn Bennett insisted on being assigned to the second shift maintenance in Plant # 1. There was an availability in second shift maintenance in Plant # 1 but that job necessitated working until 11:00 o'clock P.M. on Fridays which was in direct conflict with Gwendolyn Bennett's Sabbath observance. The company indicated that having her absent from that position would constitute a hardship for the company because she was the only worker in her function on that shift in Plant # 1. The company, as Richard Shear testified, offered to allow Mrs. Bennett to remain on layoff until a dayshift availability occurred. The case of *Kendall v. United Airlines, Inc.*, 494 F.Supp. 1380 (7th Cir.1980) indicates that a leave of absence may be a "reasonable" method of accommodation. In that case, the employee was a pilot for United Airlines who was also a member of the Worldwide Church of God. There United Airlines made no reasonable attempts to accommodate the religious preferences of Mr. Kendall. The *Kendall* court specifically referenced the fact that United Airlines could have provided a leave of absence during which time seniority would have accrued to Mr. Kendall which seniority would then have enabled Mr. Kendall to be in a better position to obtain a job assignment which would not conflict with his religious observances. In that case, Mr. Kendall offered to remain on layoff and that offer was refused by United Airlines. In this case, Monon Trailer Corporation offered to allow Mrs. Bennett to remain on layoff until a day shift availability, which would not conflict with her religious observances, arose. She refused that attempt at accommodation on the part of the company.

During this period of time from January 21st through February 25th, even though Gwendolyn Bennett was absent every Friday for in excess of five hours, the company assessed no points against her for those absences. That agreement not to assess points in this situation was the result of negotiations between the Carpenter's and Joiner's Local 2323 and the company. The existence of that agreement to remove any points assessed during that period of time is reflected in Defendant's Exhibit "P" and in the testimony of Raymond Bixler and Richard Shear. The company did make an offer on February 25, 1982, to transfer Mrs. Bennett to a position at Royalwood. That position would have involved the same classification and the same rate of pay as that currently held by Mrs. Bennett as a maintenance employee in Plant # 1. That agreement is reflected in Defendant's Exhibit "D:. Taking the dayshift at the Royalwood Plant would have meant that Mrs. Bennett could observe her Sabbath without the accumulation of any points. At the same time, she would not have suffered anything in terms of loss of classification or lost wages. Mrs. Bennett refused that offer of transfer at the meeting which occurred on February 25, 1983. After that refusal, the company began to assess points for absences from sundown on Friday through the remainder of the shift. On April 21, 1983, as Defendant's Exhibits "H", "K" and "L" indicate that Mrs. Bennett was again offered a dayshift position at the Royalwood Plant at the same classification and the same rate of pay. Mrs. Bennett refused that attempt at accommodation also. Negotiations between the representatives of the Carpenter's and Joiner's Union and the company continued and another accommodation was reached whereby Mrs. Bennett was transferred from the second shift maintenance position in Plant # 1 to the Side Table Assembly position on the dayshift. That transfer occurred on June 13, 1983. The company felt, as the testimony of Richard Shear indicated, that there were sufficient people engaged in that particular job during that shift that any ab-

sence she might have for religious observance would not pose an undue hardship to the company. The company maintained this position even though, at this particular point, mandatory overtime on Saturday was being scheduled. Mrs. Bennett missed mandatory overtime posted on July 2d and July 9th because of her religious observances and no points were assessed. In addition, she was assured by Charles Fish that the arrangement for no point assessment for absences when mandatory overtime on Saturdays was scheduled would continue while working the side table assembly position. The testimony of Mr. Bixler reflected that understanding. Nonetheless, Gwendolyn Bennett filed a grievance in July of 1983 demanding that she be placed back on the dayshift in Plant # 1 on maintenance. Discussions were held with Mrs. Bennett whereby the company informed her that mandatory overtime was being scheduled and in the Plant # 1 maintenance position she would be the only person working that shift and it would pose an undue hardship on the company to have her absent from that position when mandatory overtime was posted on Saturdays. She was informed, during these discussions, that points would be assessed for those absences. She was further informed that she could remain in the side table position and miss mandatory overtime on Saturday without points being assessed. These discussions were reflected in Defendant's Exhibits "I" and "N". Gwendolyn Bennett, nonetheless, insisted on the transfer. The transfer was to commence after the plant vacation ended on July 25, 1983. The first Saturday back on that new position mandatory overtime was posted and Gwendolyn Bennett failed to appear consistent with her Sabbath obligations. Her absence on that day resulted in the ten points being assessed against her. Her accumulated points totalled one hundred, which was grounds for termination under the contract provisions. Gwendolyn Bennett was therefore terminated effective July 29, 1983.

The evidence, in the form of testimony by Norman Pearson, Richard Shear and the Plaintiff, also indicated that no less than forty-five of the points assessed against Gwendolyn Bennett during 1983 were as the result of other than religious absences. There was an absence on February 8, 1983 for two hours and forty-nine minutes which was car related and five points were assessed for that absence. On March 2, 1983 she was absent for eight hours for sickness and had ten points assessed. On March 21, 1983 she was absent for eight hours and had ten points assessed for weather related absence. On April 29, 1983 she was absent for a full eight hours rather than the standard five hours for Friday absence due to car trouble. Ten points were assessed on that occasion. The ten points assessed on April 29, 1983 were no more than those which would have been assessed for a five hour absence, however. On May 5, 1983 she was absent for eight hours, unexcused, for a twenty point assessment. There is no dispute that Gwendolyn Bennett did not file a grievance as a result of that unexcused absence on May 5, 1983. Her testimony was that she had a written excuse for May 5, 1983 which would have mitigated her absence from the unexcused to the excused category for no more than ten points and, arguably, for no points. This incident occurred almost three months before her termination. The evidence is also clear that Gwendolyn Bennett was aware of the number of points that she had accumulated and was repeatedly counselled when she reached fifty and seventy-five point accumulation. During those counselling sessions she was made aware of the number of points which had accumulated and was warned what continued accumulation of those points might mean to her employment at Monon Trailer.

## II.

■ At issue in this case is an allegation of religious discrimination by Gwendolyn Bennett against her former employer, Monon Trailer Corporation. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* provides that it is an unlawful employment practice for any employer to, among other things, discharge any individ-

ual because of the individual's religion. 42 U.S.C. § 2000e(j) further provides:

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

What constitutes a reasonable accommodation or an undue hardship has been the subject of much litigation. The case of *Transworld Airlines, Inc. v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) provides much instruction on the meaning of these terms. While this court has openly and on the record expressed preference for the dissent of Justice Marshall in that case, this court is bound to follow the law as announced in the majority opinion thereof. In that case, the employee was also a member of the Worldwide Church of God. In *Transworld Airlines, supra,* the plaintiff had transferred to a different plant with a different seniority listing. When that transfer took effect, the plaintiff had insufficient seniority to enable him to have each Sabbath day and holy day off. Numerous meetings with the employer and the union representing the plaintiff and others were held. In this case, numerous meetings were held from December of 1982 up through July 1983 when the plaintiff was terminated. In *Transworld Airlines,* the Supreme Court held that the employer's duty to accommodate the religious preferences of its employees does not require the employer to take steps inconsistent with an otherwise valid agreement arrived at through collective bargaining. In this case there was also a valid collective bargaining agreement arrived at as a result of negotiations between Monon Trailer and Carpenter's and Joiner's Local 2323. *Transworld Airlines, supra,* held that requiring the employer to bear more than a de minimis cost in order to accommodate the religious preferences of its employees is an undue hardship. In *Transworld Airlines, supra,* at page 2273, the Supreme Court majority specifically found that it would constitute an undue hardship for the employer to be forced to permit the employee to work a four day work week and utilize a supervisor or another worker to fill in for the absent employee on the fifth day. In this case, that option was specifically offered to Gwendolyn Bennett to cover for mandatory Saturday overtime. Here Charles Fish, the Industrial Relations Director for Monon Trailer, specifically offered to allow Mrs. Bennett to remain at either the Side Table Assembly Plant or Royalwood where the company could, as a result of going short-handed in another department, permit her absence on Saturdays without undue hardship. *Transworld Airlines, supra,* also held that requiring the employee to arrange a swap between the employee and a third employee to allow for the Sabbath day observance would constitute an undue hardship. Again, in Gwendolyn Bennett's instance, Monon Trailer specifically recruited employees to swap positions with Gwendolyn Bennett in an attempt to find accommodation for her religious observances. The third alternative held in *Transworld Airlines, supra,* would constitute an undue hardship on the employer was paying premium overtime pay to fill in for the absent employee. In this case, the testimony was that, in addition to a seniority system set through collective bargaining, when Gwendolyn Bennett was required to work mandatory overtime on Saturdays so were all the other employees in that plant. To take this third option, which the Supreme Court held to be an undue hardship in any case, would have required Monon to hire an employee whose sole function would be to fill in for Gwendolyn Bennett when she was not available or to have her function unfilled during mandatory overtime. In the company's business judgment, it was essential to have her job performed when overtime was mandated. The company repeatedly indicated that the maintenance position in Plant #1 had only one employee doing specifically the classification Gwendolyn Bennett was to fulfill. Asserting as the plaintiff does, that Monon Trailer made

no attempt to accommodate her religious beliefs, ignores the fact that during 1983 the plaintiff had nine absences for religious reasons which were totally excused and no points were assessed. It also ignores the fact that during the Fall of 1981 and 1982, leaves of absence were granted to Gwendolyn Bennett with no points being assessed so she could observe her religious holidays in the Fall of the year. In addition, Gwendolyn Bennett's offer to work on Sundays and other generally recognized holidays such as the Fourth of July, Memorial Day, Christmas, etc., were not a possible accommodation because the plant itself was shutdown on those occasions and permitting Gwendolyn Bennett to work when the plant was shutdown meant additional personnel had to be on duty to supervise her work. Within the framework of *Transworld Airlines, supra,* Monon Trailer Corporation not only made attempts at accommodation, it specifically offered to incur what the Supreme Court held in *Transworld Airlines, supra,* would be an undue hardship. Under the majority holding of that case, Monon Trailer Corporation did more than Title VII would require from an employer in the way of attempting to accommodate the religious preferences and Sabbath day observances of its employees.

Nor do any other cases indicate any differing conclusions regarding the reasonableness of Monon's accommodations or attempted accommodations of Gwendolyn Bennett's religious observances. See *Murphy v. Edge Memorial Hospital,* 550 F.Supp. 1185 (M.D.Ala.N.D.1982); *Nottelson v. Smith Steelwkrs. D.A.L.U.,* 643 F.2d 445 (8th Cir.1981); *Rohr v. Western Elec. Co., Inc.,* 567 F.2d 829 (8th Cir.1977) *Ka Nam Kuan v. City of Chicago,* 563 F.Supp. 255 (N.D.Ill.1983). The case of *Kendall v. United Airlines Company, Inc.,* 494 F.Supp. 1380 (N.D.Ill.1980) found that the termination of another Worldwide Church of God member violated the provisions of Title VII of the Civil Rights Act. Specifically, that court found that a leave of absence was a method of accommodation suggested by the employee and not accepted by the employer. The court found that the employee attempted all reasonable means of accommodation and steadfastly maintained a cooperative attitude. The court further found that the employer did not demonstrate that a leave of absence was not a reasonable method of accommodation. Gwendolyn Bennett was offered a leave of absence in January 1983. She was offered that leave by Richard Shear and Charles Fish so that she could continue to accumulate seniority while on layoff and so that she might wait for the availability of a dayshift position in Plant #1 on maintenance. Gwendolyn Bennett refused that accommodation also. Within the holding of *Kendall, supra,* that offer on the part of Monon Trailer Corporation was a reasonable attempt at accommodation.

The holding in *Redmond v. GAF Corporation,* 574 F.2d 897 (7th Cir.1978) is consistent with the finding in favor of the defendant in this case. In that case, which did not involve a union shop, a member of the Jehovah's Witness' religion was told that he either worked scheduled overtime on Saturday or was terminated. The court found that the take-it or leave-it attitude of the corporation showed no reasonable attempt at accommodation. In this case numerous attempts at negotiating an accommodation with Gwendolyn Bennett were made over a period of eight months before termination resulted. It was not simply one absence from a mandatory overtime scheduled on Saturday, which was in conflict with religious observances, that resulted in her termination, but rather numerous absences after attempts at accommodation were rejected. The case of *Redmond, supra,* is clearly distinguishable upon the facts. Obviously, given the exigencies of different businesses, there can be no general rule which determines whether accommodations are in all circumstances reasonable. These determinations must be made based on the facts of each individual case, but in this case, numerous and different methods of accommodating Mrs. Bennett were suggested by the company.

As was the case in *Kendall, supra,* the cooperation or lack thereof of the employee

is also a factor for the court to consider when discussing the reasonableness of the alternatives for accommodation.

In this case, there were repeated instances of attempted accommodation on the part of the employer. In fact, the company and the union together found her three different opportunities for transferring where point accumulation would not be at issue; reduced her points on two different occasions; allowed numerous absences for religious observances, including annual leaves of absences for religious observances with no absentee points being assessed. Gwendolyn Bennett, for her part, refused these attempts at accommodation.

This judge has carefully examined each and all of the case authorities cited by the plaintiff at the end of her brief. *Tooley v. Martin-Marietta*, 648 F.2d 1239 (9th Cir. 1981), is basically a compulsory union dues case where the objection is framed on First Amendment grounds by a member of the Seventh Day Adventist faith. That factual setting is of little specific help here.

The plaintiff cites cases in which other members of the Worldwide Church of God have prevailed in Title VII claims against employers for the latter's failure to accommodate their religious practices and beliefs. See *Brown v. General Motors*, 601 F.2d 956 (8th Cir.1979); *Willey v. Maben Mfg., Inc.*, 479 F.Supp. 634 (N.D.Miss.1979) and *Niederhuber v. Camden City Vocational*, 495 F.Supp. 273 (D.N.J.1980).

In *Brown* the employer simply assigned the employee to a work shift that undermined his Sabbath observation on a simple take it or leave it basis. The facts there on the efforts of the employer to make accommodations are in sharp contrast to the ones here.

In *Willey* the issue was requested leave of absence of two employees to observe the Day of Atonement and Feast of Tabernacles. (In this case this plaintiff was permitted to celebrate both these religious days). In *Willey* the issue was a narrow one of the timeliness of notice, an issue not present here.

In *Niederhuber* a public school teacher contested his discharge. The court there held that the *real* reason for his discharge was his absences to observe holy days and held there was a failure to accommodate this employee's desire to observe approximately ten holy days per year. The efforts of this employer to accommodate this plaintiff is in vast contrast to the efforts of the employer school board to do so in *Niederhuber* which denied the teacher's request for six days of unpaid leave of absence to observe the holy days. The conduct of this employer is simply not in that vein.

The defendant cites *The Estate of Donald E. Thornton and Connecticut v. Caldor, Inc.*, —— U.S. ——, 105 S.Ct. 2914, 86 L.Ed.2d 557. It is of little specific authority in this case. As the concurrence of Justice O'Connor well illustrates the standards for Title VII remains as announced in *Transworld Airlines*. See —— U.S. at ——, 105 S.Ct. at 2918.

*Transworld Airlines, supra,* indicates that requiring the employer to incur any more than de minimis cost to accomodate religious observances is an undue hardship.

> While incurring extra cost to secure a replacement for Hardison might remove the necessity of compelling another employee to work involuntarily Hardison's place would not change the fact that the privilege of having Saturdays off would be allocated according to religious beliefs.

*Transworld Airlines, supra,* 432 U.S. at 85, 97 S.Ct. at 2277. As testimony indicated, when Gwendolyn Bennett was required to work on Saturdays, virtually every employee at Monon was likewise required to work on Saturdays. It would then be necessary to do without having her function performed or to hire an employee to fill in simply on the Saturdays that it was necessary to have mandatory overtime posted. The contract makes no provision for part-time employees.

■ The suggestion was raised during the course of the trial that the hearing and determination on the part of the Appeals Panel for the Indiana Employment Security

Division that Gwendolyn Bennett was fired for unjust cause would have potential res judicate and collateral estoppel affect on this case. This action contains the allegation by the plaintiff that the defendant violated Title VII of the Civil Rights Act of 1964. The determination by the Indiana Employment Security Division involved a determination of what constitutes termination for just cause under Indiana Law. Thus, although there may be identity of the parties, the issues adjudicated were different. The burden is upon the plaintiff to show identity of the parties and causes of action. The conclusion of that state agency on other legal issues is not binding on this court in this Title VII action.

The evidence has shown that Monon Trailer Corporation did what Title VII of the Civil Rights Act of 1964 requires in an attempt to accommodate the religious observances of its employee, Gwendolyn Bennett. Title VII does not require accommodations that are so totally one-sided as to require the employer to undergo undue hardship or more than de minimus cost. When Monon Trailer Corporation offered accommodations which involved neither loss of classification nor loss of wages it did more than the *Transworld Airlines* majority and its progeny require.

Since this court now finds for the defendant and against the plaintiff on the issue of liability, it is not necessary to reach any of the damage type issues as reflected in *Horn v. Duke Homes*, 755 F.2d 599 (7th Cir.1985).

Judgment shall enter for the defendant against the plaintiff. Each party will bear its own costs. SO ORDERED.*

* AFFIRMED BY UNPUBLISHED ORDER DATED APRIL 1, 1986, 7th Cir. No. 85–2528