ESTATE OF THORNTON ET AL. *v.* CALDOR, INC.

No. 83–1158.   Argued November 7, 1984—Decided June 26, 1985

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, STEVENS, and O'CONNOR, JJ., joined. O'CONNOR, J., filed a concurring opinion, in which MARSHALL, J., joined, *post*, p. 711. REHNQUIST, J., dissented.

*Nathan Lewin* argued the cause for petitioner Estate of Thornton. With him on the briefs were *Dennis Rapps, Daniel D. Chazin,* and *Marc D. Stern. Joseph I. Leiberman,* Attorney General, argued the cause for petitioner-intervenor State of Connecticut urging reversal. With him on the briefs were *Elliot F. Gerson,* Deputy Attorney General, *Henry S. Cohn,* Assistant Attorney General, and *John Edward Sexton.*

*Paul Gewirtz* argued the cause for respondent. With him on the brief was *Eliot B. Gersten.**

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether a state statute that provides employees with the absolute right not to work

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Lee, Assistant Attorney General Reynolds, Deputy Solicitor General Bator, Michael W. McConnell, Brian K. Landsberg, Dennis J. Dimsey,* and *David L. Slate;* for the Anti-Defamation League of B'nai B'rith by *Meyer Eisenberg, Jeffrey P. Sinesky,* and *Leslie K. Shedlin;* for Americans United for Separation of Church and State by *Lee Boothby;* for the Council of State Governments et al. by *Lawrence R. Velvel* and *Elaine D. Kaplan;* for the National Right to Work Legal Defense Foundation by *Bruce N. Cameron;* and for the Seventh-Day Adventist Church by *Robert W. Nixon.*

Briefs of *amici curiae* urging affirmance were filed for the American Federation of Labor and Congress of Industrial Organizations by *Michael H. Gottesman, Lawrence S. Gold,* and *George Kaufmann;* for the Connecticut Retail Merchants Association et al. by *Jay S. Seigel;* and for the Equal Employment Advisory Council by *Robert E. Williams* and *Douglas S. McDowell.*

on their chosen Sabbath violates the Establishment Clause of the First Amendment.

## I

In early 1975, petitioner's decedent Donald E. Thornton[1] began working for respondent Caldor, Inc., a chain of New England retail stores; he managed the men's and boys' clothing department in respondent's Waterbury, Connecticut, store. At that time, respondent's Connecticut stores were closed on Sundays pursuant to state law. Conn. Gen. Stat. §§ 53–300 to 53–303 (1958).

In 1977, following the state legislature's revision of the Sunday-closing laws,[2] respondent opened its Connecticut stores for Sunday business. In order to handle the expanded store hours, respondent required its managerial employees to work every third or fourth Sunday. Thornton, a Presbyterian who observed Sunday as his Sabbath, initially

---

[1] Thornton died on February 4, 1982, while his appeal was pending before the Supreme Court of Connecticut. The administrator of Thornton's estate has continued the suit on behalf of the decedent's estate.

[2] The state legislature revised the Sunday-closing laws in 1976 after a state court held that the existing laws were unconstitutionally vague. *State* v. *Anonymous*, 33 Conn. Supp. 55, 364 A. 2d 244 (Com. Pl. 1976). The legislature modified the laws to permit certain classes of businesses to remain open. Conn. Gen. Stat. § 53–302a (1985). At the same time, a new provision was added, § 53–303e, which prohibited employment of more than six days in any calendar week and guaranteed employees the right not to work on the Sabbath of their religious faith. See n. 3, *infra*. Soon after the revised Sunday-closing law was enacted, the Court of Common Pleas once again declared it unconstitutional. *State* v. *Anonymous*, 33 Conn. Supp. 141, 366 A. 2d 200 (1976). This decision was limited to the provision requiring Sunday closing, § 53–302a; the court did not consider the validity of other provisions such as § 53–303e. In 1978, the state legislature tried its hand at enacting yet another Sunday-closing law, Pub. Act No. 78–329, 1978 Conn. Pub. Acts 700–702; the Supreme Court of Connecticut declared the statute unconstitutional. *Caldor's Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 417 A. 2d 343 (1979). As had the Court of Common Pleas, the Connecticut Supreme Court did not address the constitutionality of § 53–303e and that provision remained in effect until challenged in this action.

complied with respondent's demand and worked a total of 31 Sundays in 1977 and 1978.   In October 1978, Thornton was transferred to a management position in respondent's Torrington store; he continued to work on Sundays during the first part of 1979.   In November 1979, however, Thornton informed respondent that he would no longer work on Sundays because he observed that day as his Sabbath; he invoked the protection of Conn. Gen. Stat. § 53–303e(b) (1985), which provides:

> "No person who states that a particular day of the week is observed as his Sabbath may be required by his employer to work on such day.   An employee's refusal to work on his Sabbath shall not constitute grounds for his dismissal."[3]

Thornton rejected respondent's offer either to transfer him to a management job in a Massachusetts store that was closed on Sundays, or to transfer him to a nonsupervisory position in the Torrington store at a lower salary.[4]   In March 1980, respondent transferred Thornton to a clerical position in the Torrington store; Thornton resigned two days later

---

[3] Thornton had learned of this statutory protection by consulting with an attorney.   See App. 88a–90a.

Section 53–303e was enacted as part of the 1976 revision of the Sunday-closing laws.   Apart from the 6-day week and the Sabbath-observance provisions, see n. 2, *supra*, the remainder of the statute provides:

"(c) Any employee, who believes that his discharge was in violation of subsection (a) or (b) of this section may appeal such discharge to the state board of mediation and arbitration.   If said board finds that the employee was discharged in violation of said subsection (a) or (b), it may order whatever remedy will make the employee whole, including but not limited to reinstatement to his former or a comparable position.

"(d) No employer may, as a prerequisite to employment, inquire whether the applicant observes any Sabbath.

"(e) Any person who violates any provision of this section shall not be fined more than two hundred dollars."

[4] The collective-bargaining agreement in effect for nonsupervisory employees provided that they were not required to work on Sundays if it was "contrary [to the employee's] personal religious convictions."   App. 91a.

and filed a grievance with the State Board of Mediation and Arbitration alleging that he was discharged from his manager's position in violation of Conn. Gen. Stat. § 53–303e(b) (1985).

Respondent defended its action on the ground that Thornton had not been "discharged" within the meaning of the statute; respondent also urged the Board to find that the statute violated Article 7 of the Connecticut Constitution as well as the Establishment Clause of the First Amendment.

After holding an evidentiary hearing the Board evaluated the sincerity of Thornton's claim and concluded it was based on a sincere religious conviction; it issued a formal decision sustaining Thornton's grievance. The Board framed the statutory issue as follows: "If a discharge for refusal to work Sunday hours occurred and Sunday was the Grievant's Sabbath . . . ," § 53–303e(b) would be violated; the Board held that respondent had violated the statute by "discharg-[ing] Mr. Thornton as a management employee for refusing to work . . . [on] Thornton's . . . Sabbath." App. 11a, 12a. The Board ordered respondent to reinstate Thornton with backpay and compensation for lost fringe benefits.[5] The Superior Court, in affirming that ruling, concluded that the statute did not offend the Establishment Clause.

The Supreme Court of Connecticut reversed, holding the statute did not have a "clear secular purpose." *Caldor, Inc.* v. *Thornton,* 191 Conn. 336, 349, 464 A. 2d 785, 793 (1983).[6] By authorizing each employee to designate his own Sabbath as a day off, the statute evinced the "unmistakable purpose . . . [of] allow[ing] those persons who wish to worship on a particular day the freedom to do so." *Ibid.* The court then held that the "primary effect" of the statute was to advance

---

[5] The Board refused to consider respondent's constitutional challenge on the ground that, as a quasi-judicial body, it had no authority to pass on the constitutionality of state law. *Id.,* at 9a–10a.

[6] The court expressly chose not to consider whether the statute violated Article 7 of the Connecticut Constitution. 191 Conn., at 346, n. 7, 464 A. 2d, at 79?, n. 7.

religion because the statute "confers its 'benefit' on an explicitly religious basis. Only those employees who designate a Sabbath are entitled not to work on that particular day, and may not be penalized for so doing." *Id.*, at 350, 464 A. 2d, at 794. The court noted that the statute required the State Mediation Board to decide which religious activities may be characterized as an "observance of Sabbath" in order to assess employees' sincerity, and concluded that this type of inquiry is "exactly the type of 'comprehensive, discriminating and continuing state surveillance' . . . which creates excessive governmental entanglements between church and state." *Id.*, at 351, 464 A. 2d, at 794 (quoting *Lemon* v. *Kurtzman*, 403 U. S. 602, 619 (1971)).

We granted certiorari, 465 U. S. 1078 (1984).[7] We affirm.

## II

Under the Religion Clauses, government must guard against activity that impinges on religious freedom, and must take pains not to compel people to act in the name of any religion. In setting the appropriate boundaries in Establishment Clause cases, the Court has frequently relied on our holding in *Lemon, supra,* for guidance, and we do so here. To pass constitutional muster under *Lemon* a statute must not only have a secular purpose and not foster excessive entanglement of government with religion, its primary effect must not advance or inhibit religion.

The Connecticut statute challenged here guarantees every employee, who "states that a particular day of the week is observed as his Sabbath," the right not to work on his chosen day. Conn. Gen. Stat. § 53–303e(b) (1985). The State has thus decreed that those who observe a Sabbath any day of the week as a matter of religious conviction must be relieved of the duty to work on that day, no matter what burden or

---

[7] We also granted the State of Connecticut's motion to intervene as of right to defend the constitutionality of the state law. 465 U. S. 1098 (1984).

inconvenience this imposes on the employer or fellow workers. The statute arms Sabbath observers with an absolute and unqualified right not to work on whatever day they designate as their Sabbath.[8]

In essence, the Connecticut statute imposes on employers and employees an absolute duty to conform their business practices to the particular religious practices of the employee by enforcing observance of the Sabbath the employee unilaterally designates. The State thus commands that Sabbath religious concerns automatically control over all secular interests at the workplace; the statute takes no account of the convenience or interests of the employer or those of other employees who do not observe a Sabbath. The employer and others must adjust their affairs to the command of the State whenever the statute is invoked by an employee.

There is no exception under the statute for special circumstances, such as the Friday Sabbath observer employed in an occupation with a Monday through Friday schedule—a school teacher, for example; the statute provides for no special consideration if a high percentage of an employer's work force asserts rights to the same Sabbath. Moreover, there is no exception when honoring the dictates of Sabbath observers

---

[8] The State Board of Mediation and Arbitration construed the statute as providing Thornton with the absolute right not to work on his Sabbath. *Caldor, Inc.* v. *Thornton,* Conn. Bd. Med. & Arb. No. 7980–A–727 (Oct. 20, 1980), App. 11a–12a; accord, *G. Fox & Co.* v. *Rinaldi,* Conn. Bd. Med. & Arb. No. 8182–A–440 (Nov. 17, 1982) ("There is no question that . . . the employee has an absolute right to designate any day of the week as his or her sabbath [and that § 53–303e(b) would be violated if] the termination was as a result of the employee's refusal to work on her sabbath"). Following settled state law, see, *e. g., Bruno* v. *Department of Consumer Protection,* 190 Conn. 14, 18, 458 A. 2d 685, 688 (1983) *(per curiam),* the State Superior Court and the Supreme Court of Connecticut adopted the Board's construction of the statute, 191 Conn., at 340–343, 350, 464 A. 2d, at 789–790, 794. This construction of the state law is, of course, binding on federal courts. *E. g., Brown* v. *Ohio,* 432 U. S. 161, 167 (1977); *Garner* v. *Louisiana,* 368 U. S. 157, 169 (1961); *Murdock* v. *City of Memphis,* 20 Wall. 590 (1875).

would cause the employer substantial economic burdens or when the employer's compliance would require the imposition of significant burdens on other employees required to work in place of the Sabbath observers.[9] Finally, the statute allows for no consideration as to whether the employer has made reasonable accommodation proposals.

This unyielding weighting in favor of Sabbath observers over all other interests contravenes a fundamental principle of the Religion Clauses, so well articulated by Judge Learned Hand:

> "The First Amendment . . . gives no one the right to insist that in pursuit of their own interests others must conform their conduct to his own religious necessities." *Otten* v. *Baltimore & Ohio R. Co.*, 205 F. 2d 58, 61 (CA2 1953).

As such, the statute goes beyond having an incidental or remote effect of advancing religion. See, *e. g.*, *Roemer* v. *Maryland Bd. of Public Works*, 426 U. S. 736, 747 (1976); *Board of Education* v. *Allen*, 392 U. S. 236 (1968). The statute has a primary effect that impermissibly advances a particular religious practice.

## III

We hold that the Connecticut statute, which provides Sabbath observers with an absolute and unqualified right not to

---

[9] Section 53–303e(b) gives Sabbath observers the valuable right to designate a particular weekly day off—typically a weekend day, widely prized as a day off. Other employees who have strong and legitimate, but non-religious, reasons for wanting a weekend day off have no rights under the statute. For example, those employees who have earned the privilege through seniority to have weekend days off may be forced to surrender this privilege to the Sabbath observer; years of service and payment of "dues" at the workplace simply cannot compete with the Sabbath observer's absolute right under the statute. Similarly, those employees who would like a weekend day off, because that is the only day their spouses are also not working, must take a back seat to the Sabbath observer.

work on their Sabbath, violates the Establishment Clause of the First Amendment. Accordingly, the judgment of the Supreme Court of Connecticut is

*Affirmed.*

JUSTICE REHNQUIST dissents.

JUSTICE O'CONNOR, with whom JUSTICE MARSHALL joins, concurring.

The Court applies the test enunciated in *Lemon* v. *Kurtzman,* 403 U. S. 602, 612–613 (1971), and concludes that Conn. Gen. Stat. § 53–303e(b) (1985) has a primary effect that impermissibly advances religion. I agree, and I join the Court's opinion and judgment. In my view, the Connecticut Sabbath law has an impermissible effect because it conveys a message of endorsement of the Sabbath observance.

All employees, regardless of their religious orientation, would value the benefit which the statute bestows on Sabbath observers—the right to select the day of the week in which to refrain from labor. Yet Connecticut requires private employers to confer this valued and desirable benefit only on those employees who adhere to a particular religious belief. The statute singles out Sabbath observers for special and, as the Court concludes, absolute protection without according similar accommodation to ethical and religious beliefs and practices of other private employees. There can be little doubt that an objective observer or the public at large would perceive this statutory scheme precisely as the Court does today. *Ante,* at 708–710. The message conveyed is one of endorsement of a particular religious belief, to the detriment of those who do not share it. As such, the Connecticut statute has the effect of advancing religion, and cannot withstand Establishment Clause scrutiny.

I do not read the Court's opinion as suggesting that the religious accommodation provisions of Title VII of the Civil Rights Act of 1964 are similarly invalid. These provisions preclude employment discrimination based on a person's reli-

gion and require private employers to reasonably accommodate the religious practices of employees unless to do so would cause undue hardship to the employer's business. 42 U. S. C. §§ 2000e(j) and 2000e–2(a)(1). Like the Connecticut Sabbath law, Title VII attempts to lift a burden on religious practice that is imposed by *private* employers, and hence it is not the sort of accommodation statute specifically contemplated by the Free Exercise Clause. See *Wallace* v. *Jaffree, ante,* at 83–84 (opinion concurring in judgment). The provisions of Title VII must therefore manifest a valid secular purpose and effect to be valid under the Establishment Clause. In my view, a statute outlawing employment discrimination based on race, color, religion, sex, or national origin has the valid secular purpose of assuring employment opportunity to all groups in our pluralistic society. See *Trans World Airlines, Inc.* v. *Hardison,* 432 U. S. 63, 90, n. 4 (1977) (MARSHALL, J., dissenting). Since Title VII calls for reasonable rather than absolute accommodation and extends that requirement to all religious beliefs and practices rather than protecting only the Sabbath observance, I believe an objective observer would perceive it as an antidiscrimination law rather than an endorsement of religion or a particular religious practice.