**Xavier D. GIBSON, Plaintiff,**

v.

**MISSOURI PACIFIC RAILROAD, Defendant.**

**No. PB–C–84–226.**

United States District Court, E.D. Arkansas, Pine Bluff Division.

Oct. 29, 1985.

Christopher Heller, Friday, Eldredge & Clark, Little Rock, Ark., for plaintiff.

Leon N. Jamison, Pine Bluff, Ark., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HENRY WOODS, District Judge.

FINDINGS OF FACT

1. Plaintiff is a citizen and resident of Pine Bluff, Arkansas. He is a Seventh

Day Adventist and as such recognizes his Sabbath from sundown on Friday to sundown on Saturday.

2. Defendant operates a railroad in Arkansas and other states and is an employer within the meaning of Title VII of the Civil Rights Act of 1964.

3. Plaintiff applied for employment with the Missouri Pacific Railroad Company (MoPac) on April 5, 1971 and began service as a Fireman on April 26, 1971. Plaintiff qualified for promotion to Locomotive Engineer on December 23, 1973.

4. Plaintiff became a Seventh Day Adventist in 1975. The plaintiff notified MoPac and the Brotherhood of Locomotive Engineers (Union) and both were cooperative and flexible in aiding the plaintiff's pursuit of his religious beliefs.

5. When MoPac's Road Foreman of Engines was made aware of the plaintiff's Sabbath requirements, he informed the plaintiff that every effort would be made to relieve him on his Sabbath provided no penalty time payments were incurred by MoPac and another engineer was available to work.

6. Even though MoPac is a "union shop," plaintiff was permitted to resign from membership in the Brotherhood of Locomotive Engineers and continue his employment with MoPac as if he had remained a member of the Union.

7. Plaintiff worked for a time as a fireman at MoPac's Pine Bluff facility. During that time arrangements were made for him to be relieved of duty on his Sabbath due to his seniority in that position. Further, it is possible to run a train without a fireman, and plaintiff could therefore be relieved of work on his Sabbath even without a replacement.

8. It is not possible to run a train without an engineer, so plaintiff would be able to lay off from an engineer assignment only if another engineer was available.

9. MoPac developed a shortage of locomotive engineers at its Alexandria, Louisiana facility in March of 1979. It was therefore necessary for engineers assigned to the North Little Rock-McGehee zone, such as plaintiff, to fill engineer openings in Alexandria. This arrangement was in accordance with the provisions of the agreement between MoPac and the Brotherhood of Locomotive Engineers.

10. Plaintiff was instructed to report to Alexandria, Louisiana early in April of 1979 to fill Locomotive Engineer job openings in line with his seniority. He placed himself on an engineer's assignment at Alexandria which had rest days of Tuesday and Wednesday.

11. As a new engineer, plaintiff did not have sufficient seniority to place himself on an assignment that had a Saturday rest day.

12. Plaintiff worked as an engineer in Alexandria on Thursday, April 5, 1979. He informed Assistant Superintendent W.B. Needham at that time that he would not be able to work on his Sabbath, which was from sundown on Friday to sundown on Saturday.

13. Plaintiff was aware and fully informed that there was a shortage of engineers at Alexandria, the very reason that he had been recently transferred there, but that if it was possible to relieve him, arrangements would be made to do so.

14. Plaintiff was informed and aware that if there were no qualified engineers available to relieve him, he would be expected to work.

15. On Friday, April 6, 1979, plaintiff was scheduled to work as an engineer in Alexandria at 3:30 p.m. He informed MoPac's Crew Caller as well as Assistant Superintendent Needham that he would not report for his assignment because it interfered with his Sabbath. Mr. Needham told the plaintiff that there was no available engineer to relieve him and that he must protect his assignment. Plaintiff nevertheless refused to report and did not work on April 6, 1979.

16. Plaintiff's refusal to work made it necessary for MoPac to fill the first four hours of his assignment on April 6 with an engineer who had just completed a tour of

duty. The remaining four hours of plaintiff's assignment were filled by a regularly assigned engineer who was on his rest day. This made it necessary for MoPac to pay each of the engineers for eight hours in punitive time payments. The exact amounts of these payments were not established at trial, but Mr. Needham's deposition testimony sets the cost at $240.00.

17. On Saturday, April 7, 1979, there was an extra board engineer available to relieve plaintiff. He was therefore permitted to lay off from his 3:30 p.m. assignment on that date.

18. Plaintiff worked as an engineer in Alexandria on April 8, 9, 11 and 12. April 10 was one of plaintiff's rest days.

19. According to Union rules, no engineer is permitted to work more than twelve hours within any twenty-four hour period. Thus, only an engineer that had not worked more than four hours in the last twenty-four hour period would be allowed to cover for the plaintiff. Otherwise MoPac would have to use two engineers in four hour shifts each to cover plaintiff's assignment. In this situation each would be paid for a full eight hours (double time) for the extra four hours worked.

20. Plaintiff worked out an arrangement with another engineer, Samuel Wright, whereby Mr. Wright would work for the plaintiff on his Sabbath days. However, Mr. Wright would be entitled by Union rules to double time pay for working overtime, and plaintiff made no offer to adjust his pay in order to satisfy this added expense to MoPac. Neither MoPac nor the Union was made aware of this agreement and Mr. Wright never worked for the plaintiff.

21. During April, 1979 there were jobs available which the plaintiff could have performed in the railroad yard at Alexandria, Louisiana which would have permitted the plaintiff to have his Sabbath off. Plaintiff was aware of these jobs but never requested nor sought out the opportunity to bid on them.

22. During April, 1979 MoPac and the Union made the plaintiff aware of an engineer's position that was available in Lake Charles, Louisiana. This particular position would have permitted the plaintiff to be relieved of duty on his Sabbath. Plaintiff could have moved to Lake Charles or commuted the 100 miles at his option, but chose to do neither.

23. On Friday, April 13, 1979, he refused to report for his regular assignment because it interfered with his Sabbath. There were two engineers on the extra board that day, but both had been previously assigned. Plaintiff's refusal to protect his assignment on April 13 made it necessary for MoPac to reassign one of the extra board engineers to cover plaintiff's assignment and to cancel the assignment originally planned for the extra board engineer.

24. A formal investigation was held in Alexandria, Louisiana on April 19, 1979 with regard to plaintiff's refusal to protect his assignment on April 13, 1979. Based on the evidence adduced at this investigation, it was decided to dismiss plaintiff from service because his failure to protect his assignment contravened General Rules B, Q, N and Rule 501(1) of MoPac's Uniform Code of Operating Rules.

25. MoPac made, in good faith and within the guidelines of its collective bargaining agreement and seniority system with the Union, reasonable efforts to accommodate the plaintiff's Sabbath observance.

26. MoPac was unable to provide plaintiff with his Sabbath off without incurring more than de minimis costs and thus would suffer undue hardship.

CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter pursuant to 42 U.S.C. § 2000e et seq. and 28 U.S.C. § 1331.

█ 2. The matters of which plaintiff complains were the result of the operation of MoPac's bona fide seniority system. MoPac is not required by Title VII to carve

out a special exception to the seniority system in order to help an employee meet his religious obligations. *Transworld Airlines, Inc. v. Hardison*, 432 U.S. 63, 83, 97 S.Ct. 2264, 2276, 53 L.Ed.2d 113 (1977).

3. It is not an unlawful employment practice under Title VII for an employer to apply different terms, conditions or privileges of employment pursuant to a bona fide seniority system. 42 U.S.C. § 2000e–2(h). The unmistakable purpose of this part of Title VII was to make it clear that the routine application of a bona fide seniority system would not be unlawful under Title VII. *Teamsters v. United States*, 431 U.S. 324, 352, 97 S.Ct. 1843, 1863, 52 L.Ed.2d 396 (1977).

4. The foundation of plaintiff's claim is that MoPac engaged in religious discrimination by failing to reasonably accommodate his religion. The accommodation sought by plaintiff was the avoidance of work on his Sabbath. The United States Supreme Court has held that such favoritism at the expense of other employees who are entitled to the benefits of a seniority system is clearly not required by Title VII. *Hardison, supra*, 432 U.S. at 80–81, 97 S.Ct. at 2274–75. The Court found that "it would be anomolous to conclude that by reasonable accommodation Congress meant that an employer must deny the shift and job preference to some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others...." *Id.* at 81, 97 S.Ct. at 2275.

5. MoPac has no obligation under Title VII to make a special exception to its seniority system in order to help plaintiff meet his religious obligations. *Hardison, supra*, 432 U.S. at 83, 97 S.Ct. at 2276. In fact, the Supreme Court strongly suggests that it would be unfair to other employees to make such an exception in derogation of its seniority system. *Id.* The strength of the Court's commitment to the rule that seniority systems are protected from Title VII challenges can be seen in *Firefighter's Local Union No. 1784 v. Stotts*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984).

6. A railroad charged with religious discrimination in employment by scheduling a newly promoted engineer in accordance with a valid seniority system to work on his Sabbath did not fail in its statutory duty on the grounds that it did not (i) investigate the possibility of reassigning plaintiff back to a fireman's position in contravention of its seniority system; (ii) initiate assigning him to another position where his seniority would have permitted him to take his Sabbath off or (iii) pay another employee overtime and charge the extra cost to plaintiff. *Turpen v. Missouri-Kansas-Texas R. Co.*, 736 F.2d 1022, 1027 (5th Cir.1984).

7. To follow the plaintiff's suggestion of requiring a private employer to provide an inflexible preference in favor of Sabbath observers over all other interests would contravene a fundamental principle of the religion clauses, as stated over twenty years ago by Judge Learned Hand, "The First Amendment ... gives no one the right to insist that in pursuit of their own interests others must conform their conduct to his own religious necessities." *Otten v. Baltimore & Ohio Rd. Co.*, 205 F.2d 58, 61 (2nd Cir.1953).

The Supreme Court has recently considered a state statute which *required* a preference for Sabbath observers and found such statutes to be clearly unconstitutional. *Thornton v. Caldor, Inc.*, ––– U.S. –––, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985). Justice O'Connor pointed out in her concurring opinion that it is only because Title VII calls for a "reasonable" rather than an "absolute" accommodation and extends that requirement to all religious beliefs and practices rather than protecting only the Sabbath observance that permits Title VII itself to withstand the constitutional challenge as being in violation of the establishment clause. *Id.* at –––, 105 S.Ct. at 2918 (concurring opinion).

8. A private employer is not required under 42 U.S.C. § 2000e *et seq.* to rearrange schedules to accommodate an employee's religious observance of Sabbath in violation of seniority and overtime provisions of a collective bargaining agreement

or incur greater than de minimis costs, as either would constitute "undue hardship." To require employers to do so would therefore violate the establishment clause under the First Amendment of the United States Constitution.