

# THE ATTORNEY GENERAL
# OF TEXAS

May 28, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. W. O. Shultz II
Associate General Counsel
University of Texas System
201 West 7th Street
Austin, Texas    78701

Opinion No. JM-711

Re: Constitutionality of procedures employed by state universities in offering religion and biblical studies courses

Dear Mr. Shultz:

You seek clarification of the scope of Attorney General Opinion JM-352 (1985). In Opinion JM-352, this office determined that the Establishment Clause of the First Amendment to the United States Constitution prohibits a state university from appointing individuals who are nominated or salaried by a religious organization to a university faculty position to teach religious studies or "Bible Chair" courses. Apparently, there exists widespread misunderstanding about the scope and implications of Opinion JM-352. This office has been favored by a comprehensive brief in this matter from the "Friends of the Biblical Tradition" which asserts that the opinion has been taken to indicate that religious studies courses cannot be offered at or through state universities in a constitutional manner. This is not the intent of Opinion JM-352. The opinion does not "ban" the teaching of religion courses at state institutions of higher education. Because this office recognizes the value of these courses and maintains that they can be offered in a constitutional manner, clarification of the exact scope of Opinion JM-352 is necessary.

As indicated in Opinion JM-352:

> [t]he First Amendment to the Constitution of the United States forbids laws 'respecting an establishment of religion, or prohibiting the free exercise thereof.' The United States Supreme Court consistently interprets the First Amendment, as applied to the states by the Fourteenth Amendment, to require that the states assume a position of neutrality with regard to religion. Wallace, [472 U.S. 38 (1985)]; Committee for Public Education v. Nyquist, 413 U.S. 756, 773 (1973); School District of Abington v. Schempp, 374 U.S. 203, 216 (1963). Your request requires application of the Establishment Clause portion of this

provision. The Establishment Clause proscribes sponsorship, financial support, and the active involvement of the government in religious activity. Grand Rapids School District v. Ball, 105 S.Ct. at 3221; 53 U.S.L.W. at 5008 (U.S. Jun. 25, 1985) (No. 83-990).

Analysis of the Establishment Clause must include consideration of the three basic criteria developed over the years by the Supreme Court. Id. at 5008. To pass muster under this clause the law or government activity must, first, reflect a clearly secular government purpose; second, have a primary effect which neither advances nor inhibits religion; and third, avoid excessive government entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971). The United States Supreme Court reaffirmed the viability of this three-part test in several recent cases. See, e.g., Grand Rapids School District v. Ball, 105 S.Ct. 3216; Aguilar v. Felton, 105 S.Ct. 3232 (1985); 53 U.S.L.W. 5013 (U.S. Jun. 25, 1985) (No. 84-237); Estate of Thornton v. Caldor, Inc., [472 U.S. 703 (1985)]; Wallace v. Jaffree, [472 U.S. 38 (1985)]. As will be seen in the discussion to follow, the second and third of these criteria are the most plainly implicated in this case.

The opinion concluded that the Establishment Clause prohibits a state college or university from appointing individuals who are nominated by or funded by a religious organization to a college or university faculty position to teach religious studies courses. The opinion relied primarily on the excessive entanglement prong of the constitutional test.

Opinion JM-352 also states, with regard to the merger of the "Bible Chair" program with a department of North Texas State University, that "the second criterion of Lemon v. Kurtzman, prohibiting the advancement of religion, is also implicated in this case because of the strong potential for and the appearance of advancing or endorsing religion." It has been noted that this prong of the constitutional test is whether the activity addressed has the primary effect of advancing religion rather than the "appearance" of advancing religion and that the suggestion that offering biblical studies courses in this manner has the primary effect of advancing religion is unsupported by the facts. A probable effect of allowing a religious organization to take even partial responsibility for choosing and paying a university faculty member is to sanction a degree of supervisory control over a university activity by a religious

organization.[1]  The constitutional meaning of "primary effect" does not mean "only" effect.  Enjoyment by a religious organization of merely "incidental" benefits does not violate the constitutional prohibition against the "primary" advancement of religion.  Widmar v. Vincent, 454 U.S. 263, 273 (1981).  Conferring an imprimatur of state approval on religious sects or practices, however, is not merely an "incidental" benefit.  454 U.S. at 274.  Attorney General Opinion JM-352 could have stated its conclusion regarding advancement less ambiguously by stating that allowing a religious organization to nominate or pay the salary of a university faculty member gives the religious organization the opportunity to control the faculty member.  This state endorsement of the religious organization's choice and control has the primary effect of advancing religion.  A religious organization cannot participate in running state affairs.  Everson v. Board of Education, 330 U.S. 1 (1947).

It has also been suggested that students will not take these courses unless they receive assurance that the teachers are designated as college or university faculty.  This suggestion, however, only reinforces the conclusion that the effect of the appointment process advances the religious organization that nominates and pays the instructor.  As a practical matter, if students wish to take outside religious studies courses and are assured that the university will grant elective credit for these courses, the fact that the course instructor is not designated as a college or university instructor or professor will not necessarily prevent students from taking the courses.  Dedicated teachers of religious studies courses will no doubt continue to teach without the professional status accorded by direct affiliation with a well-known state university.

The conclusion in Opinion JM-352 is not, however, the equivalent of determining that granting elective transfer-type credit for "Bible Chair" courses also has the primary effect of advancing religion.  The primary advancement problem addressed in Opinion JM-352 involves an administrative activity -- the appointment of "Bible Chair" teachers to the university faculty, not the offering of courses or the actual conduct of courses.  The impact of Opinion JM-352 is simply that, if a state college or university wishes to merge "Bible Chair" teachers into its faculty, it must have total discretion over the selection of and control over the payment of its teachers, subject to statutory and constitutional requirements.

---

1.  In fact, a University of Texas at Austin course catalogue submitted to this office by the "Friends of the Biblical Tradition" indicates, in part, that "instructors by whom the courses credited are given must (1) be under the control of some permanent religious organization of recognized standing. . . ."  (Emphasis added).

There exists no question that a state college or university may itself offer liberal arts courses on the non-proselytizing aspects of religion.  See Abington School District v. Schempp, 374 U.S. 203 (1963).  In Abington v. Schempp, the United States Supreme Court stated:

> [I]t might well be said that one's education is not complete without a study of comparative religion or the history of religion and its relationship to the advancement of civilization. It certainly may be said that the Bible is worthy of study for its literary and historic qualities. Nothing we have said here indicates that such study of the Bible or of religion, when presented objectively as part of a secular program of education, may not be effected consistently with the First Amendment.

374 U.S. at 225; see also Wiley v. Franklin, 468 F. Supp. 133, 149 (E. D. Tenn. 1979).  Ideally, state colleges and universities would make the secular study of religion a standard part of their liberal arts programs.  The realistic problems in obtaining funding for additional liberal arts programs at state colleges and universities, however, cannot be ignored.  Outside "Bible Chair" programs help fill the gap created by a lack of state funding for religious studies courses.

If a state college or university may itself offer secular courses in religious studies without violating the Establishment Clause, it would be anomalous to decide that the college or university could not grant elective credit for equivalent secular courses in religious studies offered by religious organizations.  State colleges and universities routinely grant transfer elective credit for religion courses completed at institutions of higher education which are supervised or affiliated with religious organizations.  If a state college or university exercises its discretion to grant elective credit for courses offered through religious organizations, however, the college or university must comply with the basic constitutional guidelines discussed in Opinion JM-352.  These guidelines stem from the three-prong test set forth in Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971), and may be summarized as follows:  (1) the nature, intent, and purpose of the courses must be secular; (2) the primary effect of the courses cannot advance or inhibit religion; and (3) the courses must be offered in a manner that avoids excessive entanglement between government and religion.

You ask, in specific, about religious studies courses offered for credit at the University of Texas at Arlington, the University of Texas at Austin, and the University of Texas at El Paso.  You provide the following information about these programs:

The University of Texas at Arlington. The University of Texas at Arlington gives degree credit for religious studies courses offered <u>through the Department of Religion</u>. These courses are taught off-campus by <u>faculty members of the Department who are selected from individuals nominated by various religious denominations. Salaries of these members are paid by the religious denominations.</u>

Individuals who are nominated to teach in the Department of Religion submit their academic credentials to the entire membership of the Department. Academic transcripts and credentials must be reviewed and approved by the Chair and faculty of the Department. The name and credentials of a candidate approved by the departmental faculty and Chair are submitted to the Office of the Dean of Liberal Arts. If the Dean concurs in the departmental recommendation, the Dean issues a letter appointing the individual to an adjunct position in the Department of Religion. The review and approval process is not perfunctory. Candidates with unacceptable academic credentials are rejected. The candidate indicates acceptance by countersigning the letter of appointment and returning it to the Dean of Liberal Arts.

The off-campus religious studies courses are included in U.T. Arlington's course schedules and the College of Liberal Arts catalog. Courses offered are subject to review by the College Curriculum Committee. Students register for these courses in the same manner as for other U.T. Arlington courses using the same tuition rates and collection procedures. Tuition is retained by the University. Semester credit hours generated for off-campus religious studies courses are not counted in the formulas used for state funding purposes.

Department of Religion faculty members assign course grades and submit grade sheets in the same manner as for courses taught by other U.T. Arlington faculty members. Student appeals concerning the assignment of a grade or other academic matters concerning the off-campus religious studies courses are handled through the office of the Dean of Liberal Arts and the Vice President for Academic Affairs of The University of Texas at Arlington.

The University of Texas at Austin. The University of Texas at Austin gives degree credit for <u>biblical</u>

studies courses offered by the Biblical Studies Association (B.S.A.). This is an Association consisting of instructors holding campus-area Bible Chairs that are nominated and salaried by various religious denominations. Courses are taught off-campus in facilities provided by B.S.A. members.

Instructors nominated by the B.S.A. and the individual course curricula must be reviewed and approved by the Religious Studies Committee, composed of College of Liberal Arts faculty members of the University of Texas at Austin. The committee conducts a review of the academic content of a proposed course and the academic background of the individual seeking to teach a biblical studies course. Following committee review, the academic credentials and course materials are forwarded to the Dean of the College of Liberal Arts who may either request further review by the College of Liberal Arts Course and Curriculum Committee or make an immediate decision regarding approval. The review and approval process is not perfunctory. Candidates with unacceptable academic credentials are rejected. Biblical Studies Association instructors are not given a U.T. Austin faculty title or afforded usual employee benefits; however, they are listed in the student/faculty/staff directory as instructors and are given faculty identification cards.

The B.S.A. instructors assign course grades and submit grade sheets through the College of Liberal Arts in the same manner as for courses taught by other U.T. Austin faculty members. A student wishing to appeal a grade or other academic matter dealing with a biblical studies course appeals to the Chair of the Religious Studies Committee, the Dean, the Executive Vice President and Provost and the President of the University of Texas at Austin.

Courses offered are listed in U.T. Austin course schedules and the catalog for the College of Liberal Arts. Students register for biblical studies courses in the same manner as for other U.T. Austin courses using the same tuition rates and collection procedures. Tuition is retained by the University. Semester credit hours generated for biblical studies courses are not counted in the formulas used for state funding purposes.

> The University of Texas at El Paso.  The University of Texas at El Paso gives degree credit for religion courses taught on campus in University classrooms by individuals nominated by religious denominations.  If paid, the teachers are paid by a sponsoring religious denomination.
>
> The individuals teaching religion courses are organized into the Department of Religion and are afforded office space on campus.  The academic credentials of individuals nominated to teach religion courses are reviewed by the Department of Religion faculty who forward a recommendation to the Dean of Liberal Arts.  The recommendation is referred to the Religious Studies Advisory Committee, composed of regular U.T. El Paso faculty members from various departments of the College of Liberal Arts, for review of the academic credentials of the nominee and further recommendation to the Dean.  If the Dean approves the recommendation, the individual is appointed as a member of the faculty of the Department of Religion with the title Adjunct Professor.  The review and approval process is not perfunctory.  Candidates with unacceptable academic credentials are rejected.
>
> The content of proposed courses must be reviewed by the Department of Religion faculty and by U.T. El Paso's Curriculum Committee.  The committee may approve, modify or reject a course proposal.
>
> Members of the Department of Religion faculty assign course grades and submit grade sheets in the same manner as for courses taught by other U.T. El Paso faculty members.  A student wishing to appeal a grade or other academic matter dealing with a religion course appeals to the Dean of Liberal Arts and the Vice President for Academic Affairs.
>
> Religion courses are listed in U.T. El Paso course schedules and the catalog of the College of Liberal Arts.  Students register for religion courses in the same manner as for other U.T. El Paso courses using the same tuition rates and collection procedures.  Tuition is retained by the University.  Semester credit hours generated for religion courses are not counted in the formulas used for state funding purposes.  (Emphasis added).

The appointment process at the University of Texas at Arlington and the University of Texas at El Paso clearly fall within Opinion

JM-352.   The university identification granted to "Bible Chair" instructors at the University of Texas at Austin raises the same issue.   No instructor who is nominated or salaried by a religious organization should be identified as a state college or university instructor.   Attorney General Opinion JM-352.   The appointment to a state position of a person nominated or salaried by a religious organization is constitutionally prohibited regardless of the nature of the courses taught by the person.   This office has been assured repeatedly that the primary concern of the religious studies community is that some structure be found that will allow the "Bible Chair" program to continue to receive elective credit from state colleges and universities.   It would be unfortunate if controversy over the professional status of these outside religious studies instructors were placed above the value of the programs to students.   If state colleges and universities do not wish to continue to grant credit for those courses, nothing requires them to do so.   They cannot, however, claim that Opinion JM-352 compels them to refuse granting credit.   The appointment issue must remain distinct from the issue of granting elective credit for courses offered by religious organizations.

As indicated, any program for granting elective credit for religious studies courses offered by religious organizations must meet a three-prong test:   (1) the nature, intent, and purpose of the courses must be secular; (2) the primary effect of the courses cannot advance or inhibit religion; and (3) the courses must be offered in a manner that avoids excessive entanglement.   As a basic rule, these tests can be met by assuring that religious studies courses taught by individuals chosen and paid by religious organizations remain distinct from university courses.   For example, a recent University of Texas at Austin catalogue describes these courses:

> Credit toward University degrees is given for courses offered by the Biblical Studies Association, under regulations intended to maintain the equivalence of these courses with the courses in The University of Texas at Austin.

> . . . .

> The instructors by whom the course credited are given must (1) be under the control of some permanent religious organization of recognized standing;   (2) possess at least the training demanded of instructors in the University;   (3) devote their time primarily to teaching;   and (4) be approved by the standing committee of the College of Liberal Arts on Bible courses and by the President.

> The courses credited must be in the field of Biblical studies and on a subject suitable for

> University instruction. The courses must be thoroughly organized, with syllabi and regular tests or examinations, and must be given in regular classes with meetings at least equal in number, in length of period, and in amount of preparation required, <u>to those of a University course involving the credit asked</u>. Biblical studies courses are subject to the same regulations and supervision as regular courses given in the University. (Emphasis added).

This description indicates that these courses are <u>not</u> "courses in the University of Texas."

The description in your request letter of the existing programs for which credit is granted by the University of Texas System raises a number of Establishment Clause questions. For example, if courses are actually taught in a manner which has the primary effect of advancing religion in general or of advancing a specific denomination, a state college or university could not grant credit for the courses without running afoul of the Establishment Clause.[2] Certain of the procedures and details outlined in your letter also raise advancement and excessive entanglement questions: the review by the university of course content, the review by the university of the instructor's qualifications, the manner in which the courses are described in the university material, the manner in which tuition is charged, the location at which the courses are taught, and the manner in which grades are assigned and grade disputes are resolved. These problems, however, are not insurmountable. For example, just because the approval process for granting elective credit may involve university review of the qualifications of the individual chosen by the religious organization to teach religious studies courses does not mean that this review is the equivalent of granting a religious organization control over the selection of and supervisory control over a university faculty member.

The key in avoiding excessive entanglement problems is in keeping the outside courses distinct. As the United States Supreme Court stated recently:

---

2. Information submitted in response to your request suggests that some of the religious studies programs currently offered are of impeccable academic quality. No individual or entity has submitted any complaint to this office about the actual classroom conduct in religious studies courses.

> Government promotes religion as effectively when
> it fosters <u>a close identification of its powers
> and responsibilities</u> with those of any — or all
> — religious denominations as when it attempts to
> inculcate specific religious doctrines. If this
> identification conveys a message of government
> endorsement or disapproval of religion, a core
> purpose of the Establishment Clause is violated.
> (Emphasis added).

<u>Grand Rapids School District v. Ball</u>, 105 U.S. at 3226; 53 U.S.L.W. 5006, 5010 (U.S. Jun. 25, 1985) (No. 83-990).

The Establishment Clause is an extraordinarily sensitive area of constitutional law which involves complex issues of fact and law. In <u>Lemon v. Kurtzman</u>, the Supreme Court cautioned:

> Judicial caveats against entanglement must
> recognize that the line of separation, far from
> being a 'wall,' is a blurred, indistinct, and
> variable barrier depending on all the circum-
> stances of a particular relationship.

403 U.S. at 614. Ultimately, the question of whether granting credit for particular religious studies courses violates the Establishment Clause depends upon the facts in each individual case.

There exist no cases directly on point with regard to religious studies courses at state institutions of higher education. In Opinion JM-352 this office indicated:

> Institutions of higher education stand on somewhat
> different footing from lower division schools
> because college students are presumed to be less
> impressionable and less susceptible to religious
> indoctrination than are elementary and secondary
> students. <u>See</u> <u>Tilton v. Richardson</u>, 403 U.S. 672,
> 685-86 (1971).

The fact that religious studies courses are voluntary at state colleges and universities and that students must even exert a great deal of initiative in seeking out these courses is also highly relevant. Again, the ultimate question is one of degree — a question which depends on all the circumstances involved in particular religious studies courses.

The article 4399, V.T.C.S., opinion process was not designed to resolve complex factual disputes. Some Establishment Clause questions are so clear that they may be answered as a matter of law. Attorney

General Opinion JM-352 addressed such a question. A state college or university cannot appoint to a college or university position an individual who is nominated or paid by a religious organization. To hold otherwise would also require upholding the reverse situation; it would be akin to saying that the Constitution allows the state to select or pay ministers or pastors of churches. This office cannot, however, state as a matter of law that a state college or university cannot constitutionally grant elective credit for religious studies courses offered by religious organizations.

In fact, if they operate within constitutional guidelines, state colleges and universities may constitutionally grant credit for religious studies courses offered by religious organizations. State colleges and universities have the responsibility to determine on academic grounds whether to grant credit for such courses. You should be aware, however, that if credit is granted for religious studies courses, it must be done in a nondiscriminatory manner. All religious studies courses must be examined in the same objective manner -- regardless of the religion, or particular denomination of a religion, to which they relate.

## S U M M A R Y

The Establishment Clause of the First Amendment to the United States Constitution prohibits a state college or university from appointing individuals to a faculty position when the individuals are nominated or salaried by a religious organization. A religious organization cannot participate in running state affairs.

A state college or university may offer liberal arts courses on the non-proselytizing aspects of religion. If a state college or university may offer secular courses in religious studies, it would be anomalous to determine that the college or university could not grant elective transfer-type credit for secular courses in religious studies offered by religious organizations. If a state college or university exercises its discretion to grant elective credit for courses offered through religious organizations, it must comply with constitutional guidelines: (1) the nature, intent, and purpose of the courses must be secular; (2) the primary effect of the courses cannot advance or inhibit religion; and (3) the courses must be offered in a manner that avoids excessive entanglement between government and religion. Whether granting credit for particular religious studies

courses violates the Establishment Clause depends on the facts in each individual case. The article 4399, V.T.C.S., opinion process was not intended to resolve complex factual disputes.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General