TORRUELLA, Chief Judge
(Dissenting).
I am largely in agreement with the majority as to the legal standards which— fuzzy as they may be — apply to this case. However, my application of those standards leads me to a different result than that reached by the majority, and I must respectfully dissent.
My first principal disagreement with the majority is that I do not understand the Dover Amendment to be an anti-discrimination statute. Had the Commonwealth of Massachusetts intended to prohibit discrimination against religion and religious land uses, it easily could have enacted a law saying “No municipality may discriminate against a proposed use of land on the basis of the religious nature of the use or the religious beliefs or affiliation of the user.” Such a genuine anti-discrimination law would be plainly permissible under the Establishment Clause. However, Massachusetts has instead prohibited any zoning ordinance that “prohibits, regulates or restricts” religious uses. The effect of this broader language goes far beyond prohibiting religious intolerance, by exempting religious users from the ordinary zoning process and by granting them a “free pass” with regard to perhaps the most important issue in zoning regulation — location.[9] In my view, either the Dover Amendment responds to a purpose substantially broader than merely preventing religious intolerance, or the statute is substantially broader than its purpose. Either way, the statute should not receive a *12 “free pass” of its own as if it were merely an anti-discrimination measure.
Second, the Dover Amendment does not embody the “benevolent neutrality” deigned by the Supreme Court to be the proper balance between the competing mandates of the Religion Clauses. A “neutral” statute, in any ordinary sense of that word, would permit (and require) religious uses and religious users to operate on an even playing field with other uses and users, without special hindrances and without special advantage. The Dover Amendment, in contrast, eschews neutrality to place religion in an exalted position, exempt from the ordinary land-use decision making process.
The majority justifies this special treatment by holding that, here, religion is just one beneficiary of a law that provides benefits to a variety of groups and that, even if the benefit were restricted just to religion, the Dover Amendment would be justified as an attempt to remove an obstacle to the free exercise of religion. Although I would agree with either justification in principle, neither is applicable here.
The majority is of course correct to recognize that religious entities may be the beneficiaries of laws that, for secular reasons, benefit a variety of groups. See Majority Op. at 6 (citing Walz v. Tax Comm’n of City of New York, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), and Mueller v. Allen, 463 U.S. 388, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983)). The lesson that I draw from cases such as Walz and Mueller is that, when religion is logically a member of some cohesive group to which a benefit is granted for a secular purpose, the Constitution does not demand the strange result of denying an otherwise available benefit to a group solely because of the group’s religious nature. However, the uses protected by the various provisions of Chapter 40A, § 3, of the Massachusetts General Laws do not comprise any cohesive scheme comparable to that in Walz and Mueller. It is hard to imagine what common secular purpose unites such apparently divergent interests as religious land users, HAM radio operators, and residents who choose to use solar power in their homes. The only common scheme that the majority offers is that “these uses, though important to all communities, would be at risk of exclusion from certain zoning areas because of local prejudice unrelated to their compatibility with the essential nature of the existing community.” Majority Op. at 6. Even assuming arguendo that these uses are in fact “important to all communities” and that there is a real “risk of exclusion,” I submit that neither the appellees nor the majority have shown that such exclusion would be “unrelated to compatibility with the essential nature of the existing community.” Other than outright discrimination, which I heartedly agree could be properly prohibited (by an appropriate anti-discrimination statute), the majority can only suggest vaguely that religious uses might be excluded based on a “general aversion to change in the neighborhood.” See Majority Op. at 6. More telling, however, are the motivations noted by the majority in another section of its opinion — increased traffic and noise, aesthetic considerations, and impact on commercial development. See id. at 7. These concerns, of course, are directly related to the compatibility of a particular use or user with the essential nature of the existing community. In fact, far from evidencing some kind of religious intolerance (none of which is alleged in this case, by the way), these are precisely the kinds of secular concerns which form the basis for all zoning regulation.
The Dover Amendment insulates religion, HAM radio operators, solar energy users, et cetera, from these typical zoning concerns for one simple reason, which the majority recognizes — the state considers these uses “beneficial.” Although the state may generally be free to protect a use or activity solely on the basis that the state likes it, the Establishment Clause prohibits such bare favoritism where the beneficiary is religion.
*13 Nor do I think that the Dover Amendment can be justified as a governmental action aimed at lifting burdens on the free exercise of religion. See Maj. Op. at 6-7 (relying on Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987)). The majority states broadly that religious users face local sentiments “ranging from outright hostility to indifference to the needs of religious organizations.” Maj. Op. at 8. Apart from religious intolerance, however, (which, again, I fully agree can and should be prohibited by a proper anti-discrimination measure), the majority points only to routine zoning considerations such as concern with traffic, noise, aesthetics, and commercial stimulus as presenting potential “burdens” on the free exercise of religion. It may be true that religious users face these common obstacles in the zoning context, but only to the extent that all land users face them. Frankly, I cannot see that requiring religious users to participate in the ordinary process by which local land-use decisions are made amounts to such a burden on the exercise of religion as to justify a blanket preference like the Dover Amendment. Cf. Amos, 483 U.S. at 336, 107 S.Ct. 2862 (finding that uncertain threat of liability imposed a “significant burden” on religious groups). Nor can I agree that the Dover Amendment merely “allows religious groups to advance their own cause” rather than constituting state promotion of religion. Through the Dover Amendment, Massachusetts has enacted a bare preference for religious uses of land and has placed the entire weight of the Commonwealth behind that preference. “Benevolent neutrality” and appropriate accommodation of religion are laudable and constitutional objectives, but the Dover Amendment simply goes too far, in my opinion. See Amos, 483 U.S. at 334-35, 107 S.Ct. 2862 (“At some point, accommodation may devolve into ‘an unlawful fostering of religion.... ’ ”).
Furthermore, just as I differ with the majority somewhat in my reading of Walz, Mueller, and Amos, I also have difficulty accepting the majority’s distinction of other Supreme Court precedents. Unlike the majority, I find the Supreme Court’s decision in Estate of Thornton v. Caldor, 472 U.S. 703, 105 S.Ct. 2914, 86 L.Ed.2d 557 (1985), quite persuasive here. In the fundamental zoning consideration of location, the Dover Amendment provides religious users with precisely the kind of “absolute and unqualified right” rejected in Thornton. Id. at 709, 105 S.Ct. 2914. Just as in Thornton, the Dover Amendment makes “no exception for special circumstances, ... no exception when honoring the dictates of [religious users] would cause ... substantial economic burdens or when ... compliance would require the imposition of significant burdens on other[s, and] .... no consideration as to whether the [municipality] has made reasonable accommodation proposals.” Id. at 709-10, 105 S.Ct. 2914.
Likewise, I read the Supreme Court’s fractured decision in Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), to support striking the Dover Amendment. As Justice Brennan stressed on behalf of three justices:
[W]hen government directs a subsidy exclusively to religious organizations that is not required by the Free Exercise Clause and that either burdens non-beneficiaries markedly or cannot reasonably be seen as removing a significant state-imposed deterrent to the free exercise of religion, ... it “provides unjustifiable awards of assistance to religious organizations” and cannot but “convey a message of endorsement” to slighted members of the community.
Texas Monthly, 489 U.S. at 15, 109 S.Ct. 890. Justices Blackmun and O’Connor stated that “[a] statutory preference for the dissemination of religious ideas offends our most basic understanding of what the Establishment Clause is all about,” id. at 28, 109 S.Ct. 890 (Blackmun, J., concurring), and I believe the same is true of a *14 statutory preference for religious users in zoning matters.
In summary, I cannot agree with the majority’s acceptance of the'Dover Amendment as a tolerable accommodation of religion. I would hold that the statute fails both the purpose and éffects prongs of the Lemon test, and I would declare the Dover Amendment unconstitutional.
I am slightly more troubled by the need to strike down the Belmont bylaw. Unlike the majority, I am not entirely persuaded that the Dover Amendment and the Belmont bylaw must stand or fall together. After all, what troubles me about the Dover Amendment is largely the fact that it removes religious users from the ordinary land-use decision making process and thus places them in a position of considerable advantage over nonreligious uses and users. The Belmont bylaw would not necessarily raise such concerns, because a local zoning bylaw merely represents the product of precisely that ordinary local decision making process which, if done on a.“level playing field,” properly determines local land-use issues. However, because the Belmont bylaw is so closely tied to the Dover Amendment, I would find that it is incurably infected with the unconstitutionality of the state statute and must be stricken. I do not suggest, however, that the Establishment Clause would prohibit the Town of Belmont from enacting a bylaw permitting religious uses in any or all of its zoning districts, so long as such bylaw were enacted through the ordinary land-use decision making procedures.

. While the Dover Amendment allows for “reasonable regulation” of certain aspects of physical structures, there can be no dispute that the statute requires that religious uses be permitted on each and every parcel of land in every zoning district in the Commonwealth.